STATE OF MISSOURI, Respondent, v. JOHN F. DOUGHERTY, Appellant. —No. 40892.—216 S. W. (2d) 467.

Division One, January 7, 1949.

*Wm. Waye, Jr., Dewey S. Godfrey* and *Rudolph K. Schurr* for appellant.

*J. E. Taylor*, Attorney General, and *Robert R. Welborn*, Assistant Attorney General for respondent.

738

[469] CONKLING, J.—Under Section 8401(f), R. S. Mo. 1939, defendant was convicted of feloniously leaving the scene of accident and injury. He was sentenced to one year imprisonment in the county jail and to pay a fine of one hundred dollars ($100.00). Section 8404(c), R. S. Mo. 1939. The cause originated in the City of St. Louis, but went to St. Charles County on change of venue. Defendant appealed.

Briefly, the State's case tended to show that about 12:15 A. M., December 15, 1946, a gray colored automobile travelling north on Kingshighway in the City of St. Louis struck a Yellow taxicab in the intersection of Kingshighway and Easton Avenue. The taxicab, travelling east on Easton, was damaged and Irene Schmich, the sole passenger in the taxicab, and James J. Sneed, Jr., the operator, sustained some injuries. The gray colored automobile was damaged in the collision, did not stop at the immediate scene of the accident, but turned east on Easton Avenue and moved slowly away. Shortly after the collision, a man was seen trying to put down the hood of a gray colored automobile which had stopped on the south side of Easton, near Aubert, a street some 354 feet east of the point of collision. A few minutes later that automobile was gone.

A police officer, who heard the collision, arrived at the scene of accident within four or five minutes. He questioned Sneed, Miss Schmich and bystanders and obtained from Sneed the defendant's license number and a description of a gray Mercury automobile. Two other officers later talked to Sneed at the scene of the accident. Subsequently, within an hour, after police radio broadcasts for a 1946 Ford or Mercury automobile, perhaps bearing Missouri license No. 5-957, police officers, who had heard the broadcast and were on search, located a damaged Mercury bearing this license number near Marcus and Highland Streets, some two blocks east and four blocks north of the scene of the accident. That automobile, carrying a license number (5-957) issued to defendant, was parked near the residence of Mr. Callanan, then the coroner of the City of St. Louis, but no one could be located at that address. Defendant was sought for questioning, but could not be found at his residence at 8823 Halls Ferry

Road. Later defendant's attorney called the police station at Deer Street and Easton, 10th District, and advised that defendant had been implicated in an accident and that he (the attorney) would have "the driver" at the police station about 9 A. M. About 9:30 A. M. defendant and his attorney arrived at the 10th District Police Station on Deer Street. Defendant told the police captain in charge (Rowland) that he had had an accident; that he was the driver of the car; and that "he evidently dropped asleep at the wheel and his wife was ill and for that reason he didn't remain at the accident".

Defendant's evidence tended to show that he collided with a Yellow Cab at Kingshighway and Easton on the night in question; that his wife, to his right in the front seat, was injured; and that he drove east on Easton and parked his car "right west of Aubert." He put down the hood, "which was sitting up," and then went back to the driver of the cab involved in the collision and gave him his automobile license number and a card bearing the words: "John F. Dougherty, Justice of the Peace Court (7th District) 2200 St. Louis Avenue. Garfield [470] 6301." He obtained the driver's name and saw him (Sneed) write defendant's license number on a sheet similar to Sneed's trip sheet for the morning of December 15, 1946. The trip sheet, admitted in evidence, had this notation: "5957 Mo. 46 Mer. Grey." When defendant talked to Sneed, the taxicab was in the street, north of the street car tracks and east of Kingshighway. Defendant did not help move it. He was at the cab "a very short time" and there was no police officer there. The cab driver was in the cab and said he was hurt in his chest. He was not dazed or groggy. Defendant came up to the left side of the cab and did not go around to the right side, nor open the back door. He told the driver that "he was insured and would take care of everything." He did not look in the back of the cab but there was no one there as far as he could see. Defendant returned to his automobile and drove to Mr. Callanan's house, arriving about 12:30 A. M. He told Mr. Callanan (the coroner) that he had had an automobile accident. When defendant reached his own home about 1 A. M., he called his attorney, and asked him to call the police. About 9:30 A. M. defendant came to the Deer Street police station with his attorney and reported to Captain Rowland. Defendant denied the admissions testified to by Captain Rowland. From the police station defendant and his attorney went to the Yellow Cab Company office, and from there to Sneed's residence (but did not see Sneed). A witness, who identified the cab driver's trip sheet and Sneed's handwriting, did not know the handwriting of the notation, but said that the paper was Sneed's trip sheet for the morning of December 15, 1946.

The information was in four counts, but the State abandoned Counts One and Three and submitted the cause to the jury on Counts Two and Four. Count Two charged that the collision was due to

accident; that the taxicab was damaged and Sneed and Miss Schmich injured; and that defendant with knowledge of such facts, feloniously left the place of accident, damage and injury "without stopping, and without giving his name or residence, or city of said residence, or street of said residence, or street number of said residence, or the motor vehicle number of said Mercury automobile" to Miss Schmich, Sneed or Mound City Cab Company, (owner of the taxicab); "or any of them" or to any of the others named in the statute. Count Four charged only injury to Miss Schmich and knowledge thereof by defendant and a failure to stop and to furnish the required information to her or to the others named in the statute. Instructions Four and Five, respectively, submitted these counts to the jury and directed a verdict of guilty upon a finding of the facts therein submitted. Sneed was not mentioned in Count Four, except as being the operator of the taxicab, and he was not mentioned in Instruction 5 submitting this count to the jury. Instruction Five was apparently drawn and submitted on the theory that the jury might believe and find that Miss Schmich was the only injured party. Defendant tendered a demurrer to the evidence on each count. The demurrers were overruled. The jury returned a general verdict of guilty, "guilty of leaving the scene of accident, as alleged in the information" (no reference to counts), and the judgment and sentence appealed from was entered thereon.

Appellant contends that the verdict was not responsive to the issues submitted and that it did not show upon which count defendant was found guilty. The issue turns on whether two separate and distinct crimes were charged in the information and submitted by the instructions. "The general rule is, where an indictment is in two or more counts, each of which charged the same offense in a different form, or where the several counts relate to the same transaction and are framed on different sections of the statute, to meet the exigencies occurring at the trial, or where the several counts state different degrees of the same offense, a general verdict of guilty will be sustained. . . . On the other hand, the rule is well established that a general verdict where the several counts of the indictment charge several distinct crimes will not be upheld." State v. Pace, 269 Mo. 681, 192 S. W. 428, 429.

Counts Two and Four of the information relate to the same transaction. The crimes charged are the same. The punishment of each is the same. Only the proof necessary [471] to support the counts differs. There was only one accident and the essence of the one offense charged was the one of leaving the scene of the one accident, without stopping and giving the information required by the statute. State v. Hudson, 314 Mo. 599, 285 S. W. 733; State v. Tippett, 317 Mo. 319, 296 S. W. 132; State v. Harris, 357 Mo. 1119, 212 S. W. (2d) 426, 427; Runyon v. State of Indiana, 219 Ind. 352, 38 N. E.

(2d) 235, 237. However, the State contends that the words "to the injured party", as used in the statute, include the plural (parties), unless there be something in the subject or context repugnant to such construction. (Sec. 652 and Sec. 653, R. S. Mo. 1939); that the information required must be furnished to *each* injured party, or to a police officer, etc., and that a failure as to one injured party, regardless of it having been furnished to another, constitutes another offense. One of the definitions of the term "party" as given in Webster's International Dictionary (Second Edition) is as follows: "A person who constitutes or is one of those who compose, or a body of persons constituting, one or other of the two sides in an action or affair; one concerned in an affair; a participator; as, a party in interest; the two parties in a marriage contract; a party to plot."

"Criminal statutes are to be construed strictly, liberally in favor of the defendant, and strictly against the state, both as to the charge and the proof. No one is to be made subject to such statutes by implication." State v. Bartley, 304 Mo. 58, 263 S. W. 95, 96; State v. Taylor, 345 Mo. 325, 133 S. W. (2d) 336, 341. When the information required by the statute is furnished to one injured party, it is thereby furnished to all and "to the injured party," without regard to their number; furnishing the information required to one within the class "the injured party" will fully satisfy the statute and bar a conviction for failure to furnish the information to another within the same class. Any other conclusion would result in there being as many offenses committed by the one act of leaving without stopping and furnishing the information required as there were persons injured and not individually furnished the information, that is, where the information was not furnished to a police officer or any of the others mentioned in the statute. Such was not the intent of the lawmakers as evidenced by other provisions of the statute. We hold that the information required need only be furnished once to one of those mentioned in the statute and only one offense was charged in the information. Where a single offense is charged in different ways in separate counts to meet the form the proof may take a general verdict is sufficient without any designation of the count upon which it is rendered. State v. McDonald, 85 Mo. 539, 543; State v. Schmidt, 137 Mo. 266, 270, 38 S. W. 938; State v. Noland, 111 Mo. 473, 501, 19 S. W. 715; State v. Librach, (Mo. Sup.) 270 S. W. 284, 285; State v. Mitts, 315 Mo. 1320, 289 S. W. 935, 937; State v. Bray, (Mo. Sup.) 246 S. W. 921, 922. The verdict was responsive to the issues submitted.

Appellant contends that there was no evidence to justify the submission of this cause to the jury; that no case was made on Count Two, because the State's evidence and admissions show compliance with the statute by notice to Sneed and to a judicial officer (the

coroner) and showed no knowledge by defendant of Miss Schmich's presence or injury; that no case was made on Count Four, because the State's evidence failed to show that defendant *knew* that Miss Schmich was a passenger in the taxicab or that she was injured; that Miss Schmich, being only a passenger in the cab, was not a party to the accident and collision within the meaning of the statute and was not entitled to the information therein mentioned; and that the information given by defendant to Sneed and to the coroner was a full compliance with the statute and no offense was shown, even if defendant had known that Miss Schmich was a passenger and was injured.

In the course of the trial, defendant's attorney, Mr. Waye, made a request of the assistant circuit attorney, as follows: "Now, Mr. Snider, in your possession is a card given you by Mr. James J. Sneed, will you produce that?" The card, which was later admitted in evidence, was handed to Mr. Waye by Mr. Snider and appellant now contends that "by producing the card Mr. [472] Snider admitted that it had been given to Mr. Sneed *by Mr. Dougherty at the scene of this accident."* (Italics ours). There was no express admission in terms as to when or where or from whom Sneed may have obtained the card in Mr Snider's possession, or when Sneed may have given the card to Mr. Snider. Nor was there any denial or contention by Mr. Snider, or by anyone, that the card in question had not been given by defendant to Sneed at the time and place of the accident. It was identified by defendant as the card he had there given Sneed. Absent such denial and contention the circumstances of the incident are sufficient to establish its identity and authorize its admission in evidence. There was no admission that the coroner was a judicial officer.

Defendant testified he did not see anyone in the back of the cab. Nor is there any evidence in this record that he did. Appellant insists that the State wholly failed to prove any facts or circumstances from which knowledge on the part of defendant of Miss Schmich's injury might be inferred; and that no offense, as charged, was proven under either count. We think the word "knowing", as used in the statute, means actual knowledge rather than mere constructive knowledge, or such notice as would put one on inquiry, and more than mere negligence in failing to know, or the mere presence of facts which might have induced the belief in the mind of a reasonable person.

The State's evidence was sufficient to authorize a finding that the collision happened shortly after midnight; that defendant's automobile collided with the taxicab in the intersection with sufficient force to throw the taxicab to the other side of the street, break glass, crumple fenders and cause severe damage to the taxicab as well as to injure both driver and passenger; that a hub cap was knocked off of defendant's automobile; that the defendant did not immediately

stop, but drove away from the scene at five to ten miles per hour with the hood of his car up and the radiator leaking badly; and that the car was not stopped within 300 feet of the scene of the collision, even to put the hood down. ...

The evidence shows that Miss Schmich was in the taxicab and was thrown to the floor of the taxicab by the force of the collision. Her head was scratched and bumped, her legs were bruised and hurt and she thought she had glass in her right eye. It was cut. She got out as soon as the cab stopped and a bystander could open the door and help her out. She looked for the gray car, which she had seen a moment before the impact. It was gone. She was out of the cab only a few minutes. She stood by the right door on the south side of the cab and then got back in the cab and waited the arrival of the ambulance. No cards or names were given to her, other than the name of the cab driver. There was heavy traffic through the intersection, a street car was approaching, and bystanders pushed the taxicab from the street into a filling station. She did not see defendant out there that evening. She didn't see anyone give the driver a card while she was in the taxicab, and she "was out of the cab such a short time." The driver (Sneed) was not out of the cab until the ambulance arrived. Immediately after the collision Sneed appeared to be unconscious, his head was down and he did not answer when spoken to, but later he revived. He was not produced as a witness by either the State or defendant and the witnesses who were asked about him did not know where he was.

Defendant's own evidence shows that he knew that his own automobile was damaged and his wife injured in the collision. He parked his car and put down the hood. He walked up to the left side of the taxicab and asked the driver's name and learned that he was hurt. Defendant said that he gave his card and license number to the cab driver and did not look in the back seat of the cab or see anyone there.

Was the State's case made out? The jury were at liberty to disregard defendant's testimony and to find that defendant did not return to the scene of the accident; that he was not seen about the taxicab; and that his name was not given to Sneed or police officers. Police officers remained at the scene until the injured parties, accompanied by an officer, were taken to a hospital. Even on defendant's evidence, a jury could [473] find that he drove away from the *immediate* scene of this near-midnight collision.

But we do not hold that the law required one who has had an accident to stop instantly, or within any certain number of feet of the place where the collision occurred. It may be impossible to instantly stop. Circumstances and the necessities of the occasion may require that to be varied. It may vary also within the range of the

· .*George L. Stemmler*, City Counselor, and *John P. McCammon*, Associate City Counselor, for defendants-respondents.

*Paul J. Kaveney* and *R. M. Stout* for defendant-respondent St. Louis Housing Authority.

*David M. Proctor*, City Counselor, and *John J. Cosgrove*, Assistant City Counselor, for intervenor, Kansas City, Missouri.

[490] CONKLING, J.—This is an action for a declaratory judgment that the prior tax exempt status of defendant-respondent St. Louis Housing Authority shall no longer continue. The Chancellor adjudged all the property of Housing Authority to be tax exempt. Plaintiff appealed.

Plaintiff is a taxpayer and the owner and operator of many parcels, of improved real estate in the City of St. Louis. In addition to the St. Louis Housing Authority, the City of St. Louis, its Assessor, Comptroller and Collector were also made defendants.

Judgment was sought declaring that since the effective date of our 1945 Constitution all real and personal property of Housing Authority has been subject to the payment of ad valorem taxes; that bonds of Housing Authority are debts of the City of St. Louis within the meaning of Sections 26, 27 and 28 of Article VI of the Constitution; and that it is the duty of the City Assessor, Comptroller and Collector to proceed to collect the above mentioned taxes.

Defendants City of St. Louis, its Assessor and Collector by their joint answer asked the court to find plaintiff was not entitled to the relief prayed; in its separate answer Housing Authority asked the same; but the City Comptroller in his separate answer prayed the court to adjudge that Housing Authority's property was subject to ad valorem taxes. The City of Kansas City was permitted to intervene and file answer. At the request of the St. Louis Real Estate Board D. Calhoun Jones, Esq. was appointed Amicus Curiae.

The cause was submitted to the court below upon the pleadings, an agreed statement of facts and exhibits. The court adjudged that all of Housing Authority's properties are exclusively used "for purposes purely charitable" under Section 6 of Article X, of the Constitution and Mo. R. S. A. 10942.4, and are exempt from all ad valorem taxes; that the bonds of Housing Authority are not debts or obligations of the City of St. Louis, said bonds being authorized by Mo. R. S. A. Sec. 7866.

Upon stipulation the cause was submitted here without argument upon the briefs filed by appellant and Housing Authority. In the two page brief of the City of St. Louis, its Assessor and Collector, the

and located. The information given served the basic purpose and intent of the statute. With some persons, perhaps, had some of the given information been omitted, it might possibly be difficult, or impossible, to locate the automobile driver in question without the giving also of the residence address. But here, sufficient information was given that it was impossible to conceal identity. For example, assume that the Mayor of New York, Missouri were in an accident and gave his automobile license number to the other party and also a card stating "John Jones, Mayor of New York, New York, Missouri." Should the mere fact that, before handing his card to the other party, he had merely failed to mark out the words "Mayor of New York" and write thereon his street and house number convict him under this statute? We think not. The information given would have identified him. What if a defendant in this character of prosecution operated the New York Garage in New York, Missouri, a village so small in population that it had no named streets and no numbered houses? Would not, then, a business card identifying him as proprietor of the New York Garage in New York, Missouri serve the identification purpose of the statute? It would. Yet that information would not include a "street number." There is no particular magic in the words "street number" as included in the statute unless the identification of defendant be impossible if the name of the street and the residence number thereon shall not have been given. It seems inescapable that defendant complied with the underlying purpose of the statute. In the instant case defendant not only gave sufficient identification information to Sneed, he thereafter voluntarily caused the matter to be reported to, and then went himself to the police station. The information furnished to Sneed, if a jury should find it was furnished, was a defense. The error of the trial court in failing to include in Instruction 4 the defense above noted was reversibly erroneous.

Other matters unlikely to occur on retrial, but within the purview of our rulings above, are suggested in the brief but we believe that, in view of our rulings herein, we need not extend this opinion to discuss them.

The judgment appealed from is therefore reversed and the cause is remanded for re-trial. It is so ordered. *Douglas*, P. J., and *Clark*, J., concur; *Hyde*, J., concurs in result but believes State made a case for Count 4.

BADER REALTY AND INVESMENT COMPANY, a Corporation, Appellant, v. ST. LOUIS HOUSING AUTHORITY, a Corporation; CITY OF ST. LOUIS, a Municipal Corporation; EUGENE M. GUISE, as Assessor of the City of St. Louis; LOUIS NOLTE, as Comptroller of the City of St. Louis; RICHARD E. GRUNER, as Collector of the City of St. Louis, Respondents.—No. 41279.—217 S. W. (2d) 489.

Court en Banc, January 20, 1949.

*Robert W. Herr* for plaintiff-appellant.

human factors involved. Defendant tendered instructions (d-4 and D-6) upon the theory that he "went back to the place of said accident." We hold that the State made a case for the jury upon Count Two of the information and the court did not err in overruling the demurrer to the evidence as to Count Two at the close of the whole case.

As to Count Four charging only an injury to Miss Schmich and that defendant "then and there well *knowing* that the said injuries had been caused to said Irene Schmich" failed to stop and give the required information to her or to others named in the statute, we hold the State failed to make a case for the jury. We find no evidence at all in this record that defendant knew that Miss Schmich was in the taxicab and had been injured. The trial court therefore should not have given Instruction Five. For its action in overruling defendant's demurrer to the evidence as to Count Four and in giving Instruction Five the cause must be reversed and remanded.

Appellant further contends that the court erred in giving Instruction 4 because it failed "to embody defendant's defense in the case." It is insisted that the required information was in fact furnished by defendant to Sneed (within the class "the injured party") and to Callanan, as a "judicial officer."

It is assigned as error that Instruction 4 "failed to embody the the defense in this case, namely, that the defendant *did stop* and that he *gave* Sneed his license number and address, etc., and the instruction should have told the jury *that if they found those facts,* then they should acquit the defendant." (Italics ours).

An instruction which purports to cover the whole case and entirely ignores a defense supported by evidence is erroneous and constitutes reversible error. State v. Gabriel, 301 Mo. 365, 256 S. W. 765, 767; State v. Busch, 342 Mo. 959, 119 S. W. (2d) 265, 269. Defendant's theory is that the information furnished constituted a complete defense, and that it should have been recognized and instructed upon affirmatively.

Mr. Callanan, the coroner of the City of St. Louis, was not a judicial officer within the meaning of the statute. Art. V, Sec. 1, Const. Mo. 1945; State ex rel. Heimburger v. Wells, 210 Mo. 601, 610, 109 S. W. 758; State ex rel. School Dist. No. 1, v. Andrae, 216 Mo. 617, 629, 116 S. W. 561, 563; Queatham v. Modern Woodmen of America, 148 Mo. App. 33, 47, 127 S. W. 651, 654; 46 C. J. 926, Sec. 7; 42 Am. Jur. 898, Public Officers, Sec. 27. Defendant's statement to Callanan that he had had "an automobile accident" did not meet the terms of the statute.

Did the information furnished to Sneed constitute a defense? The statute, supra, in part, reads: ". . . shall leave the place of said

injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and chauffeur's or registered operator's number, if any, . ... " We construe the words "motor vehicle number" to mean the motor vehicle state license number appearing on the vehicle operated. Defendant's evidence, as stated, showed that he stopped near the intersection of Easton and Aubert, about 300 feet from the point of collision; and that immediately he went to the driver of the taxicab, learned that he was injured and gave his correct automobile license number and a card with his name thereon showing "John F. Dougherty, Justice of the Peace Court (7th District) 2200 St. Louis Avenue. Garfield 6301." Defendant (formerly a Justice of the Peace in St. Louis for ten years) had been sheriff of the City of St. Louis for almost two years and resided at 8823 Halls Ferry Road. He did not give Sneed his "residence, ... .. ... and street number." Instruction 4 closely followed the above quoted part of the statute and required a finding of non-compliance therewith. Defendant offered numerous instructions [474] authorizing a finding of "not guilty," if defendant gave Sneed "the license number of his automobile and his card bearing his name;" if the State failed to prove defendant "failed to give his name to James J. Sneed, Jr."; and unless the State proved defendant "did not leave his name and license number with" Sneed. The instructions were based upon the theory that the giving of the card and license number fully complied with the statute as a matter of law, required the recognition of the affirmative defense in Instruction 4 and authorized defendant's instructions embodying and affirmatively submitting the defense mentioned. The instructions were refused.

The obvious purpose of the statute is to prevent "those controlling and operating automobiles from concealing their identity by immediate flight from the scene of the accident," Ex parte Kneedler, 243 Mo. 632, 147 S. W. 983, 984; " ... ... to obtain . . . information ... . of a nature which will identify him readily," Commonwealth v. Horsfall (Mass.) 120 N. E. 362, 364; " . . to prevent drivers from seeking to evade prosecution by escaping before their identity can be determined," State v. Clark (S. D.) 290 N. W. 237, 239; and " . .... to sufficiently establish the identity of the parties so that they and police authorities may know with whom to deal in matters growing out of the accident," Runyon v. State, (Ind.) 38 N. E. (2d) 235, 237.

We conclude that the information given by defendant to Sneed, the taxi driver, if a jury should find it was given, was a compliance with the statute. He gave his name, the correct license number of his automobile, his city, a telephone number and other data from which he, or anyone under like circumstances, could be quickly identified