Northern Illinois Coal Corporation and Seminole Coal Corporation, Appellees, v. Joseph Langmeyer, Highway Commissioner of Lenzburg Township, St. Clair County, Appellant.

Term No. 50-0-18.

Opinion filed January 31, 1951.
Released for publication February 28, 1951.

F. E. MERRILLS, of Belleville, for appellant.

DAN McGLYNN and KRAMER, CAMPBELL, COSTELLO & WIECHERT, all of East St. Louis, for appellees; KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, and ROOT & HOFFMAN, of Morris, of counsel.

MR. JUSTICE BARDENS delivered the opinion of the court.

This case has been before us previously on a question regarding a temporary injunction and our opinion in that instance set forth the allegations of the complaint rather thoroughly and they will not be repeated here. (See 340 Ill. App. 423.) To the complaint the defendant filed answer and the cause came on for hearing before the court. At the termination of the hearing the court issued a permanent injunction against defendant, restraining him from interfering with the operations of the plaintiff. From this decree the defendant highway commissioner has brought the appeal to this court.

Plaintiff, Northern Illinois Coal Corporation, is the owner of certain property in said township and plaintiff, Seminole Coal Corporation, is now engaged in strip mining operations on said property under an agreement between it and the Northern Illinois Coal Corporation, Seminole Coal Corporation being a wholly owned subsidiary of the Northern Illinois Coal Corporation. Said two corporations are hereinafter referred to as "plaintiffs."

The evidence in the case shows that the said township of Lenzburg, which is located in St. Clair county, has two township roads intersecting at a point adjoin-

ing property owned by the plaintiffs. These roads are designated as the "Golden Rule Road" which runs east and west and the "Dutch Hill Road" which runs north and south. Plaintiffs own land south and east of the intersection of the two highways, south and west of said intersection, and north and west of said intersection. For some time prior to the institution of this suit plaintiffs were mining the land south and east of the said intersection and in connection with the mining operations thereon they had constructed on that land at a cost in excess of a million dollars an office building, tipple, washing and preparation plant, railroad siding, repair shops, and other facilities necessary to the mining and production of coal. Plaintiffs determined in the conduct of their business that it was feasible to commence mining operations on the property north and west of the road intersection, and determined that it was necessary in such mining operations to build a haulage road across the "Golden Rule Road" west of the intersection and across the "Dutch Hill Road" south of the intersection in order to haul coal from the northwest quadrant to the tipple, washing and preparation plant, and other facilities now located in the southeast quadrant. In order to do this it was necessary to move certain heavy drag line machinery to the northwest quadrant and thereafter to haul coal from the northwest quadrant by truck to the plant in the southeast quadrant. The plaintiffs own the fee in and to said highways adjoining their land. Said highways are township highways over which the public has an easement for right of way purposes.

The decree makes findings substantially as above and recites that the plaintiffs, under the authority of the temporary injunction, had moved the heavy machinery across the roads and had constructed a haulage road and had laid subterranean electric cables under and across the said roads. The court also found that

the said haulage road as constructed and the subterranean cables as laid do not constitute obstructions to the highway; that the plaintiffs maintain a watchman at the place where the haulage road crosses the township roads and that said watchman directs the truck traffic of the plaintiffs in such a manner as to give the right of way to all persons and vehicles traveling upon the township roads; that plaintiffs do not interfere in any manner with the public's use of its road easements; and that unless plaintiffs are so permitted to cross over the said township roads they will suffer irreparable damage for which plaintiffs would have no adequate remedy at law and that defendant is unable to respond in damages. The decree then restrains the defendant or anyone acting under and through him from preventing, obstructing, or interfering with the plaintiffs in their use and maintenance of the haulage road, but the decree provides that the plaintiffs shall continue to maintain said haulage road as now constructed and shall continue to provide watchmen at the points where the haulage road crosses the township roads and continue to give the right of way to all persons and vehicles traveling upon the township roads.

The proof shows, and it is conceded by plaintiffs, that the trucks exceed the weight limitations as set out in Article XVI of the ''Uniform Act Regulating Traffic On Highways,'' being pars. 124 to 135, inclusive, of said Act, secs. 221 to 232, inclusive, of chapter 95½, Illinois Revised Statutes 1949 [Jones Ill. Stats. Ann. 85.253–85.264]. The defendant highway commissioner contends that in as much as the sections of the statute pertaining to maximum weight limitations are violated, the plaintiffs should not be allowed to continue their mining operations in violation of the statute without obtaining a permit from him as the ''Local Authority.''

 It appears from the evidence and the decree of the court below that the movement of the heavy machinery was effected under the protection of the temporary injunction and the only question before us now is the movement of the trucks over said haulage road for the purpose of carrying coal from the place where it is mined to the facilities in the southeast quadrant.

In his brief and argument the defendant states that he is simply replying upon the provisions of the act above referred to. The pertinent provisions of said act are as follows:

Paragraph 124 of said act provides:

"It is unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or vehicles of a size or weight exceeding the limitations stated in this article . . . ."

Paragraph 131 (a) of the act provides:

"No vehicle or combination of vehicles equipped with pneumatic tires shall be *operated* . . . *upon* the highways of this state when the gross weight on the road surface through any axle thereof exceeds 16,000 pounds; . . ." (Italics ours)

Then follow the various maximum weight provisions of the various classes of vehicles.

Paragraph 133 (a) of the act provides:

"The Department with respect to highways under its jurisdiction and local authorities with respect to highways under their jurisdiction may, in their discretion, upon application in writing or by telegram and good cause being shown therefor, issue a special permit in writing or by telegram if a written permit is issued the same day authorizing the applicant to operate or move a vehicle or combination of vehicles of a size or

weight of vehicle or load exceeding the maximum specified in this Act or otherwise not in conformity with the provisions of this Act upon any highway under the jurisdiction of the party granting such permit and for the maintenance of which said party is responsible. Where a permit is sought for overweight the application shall show that the load to be moved by such vehicle or combination of vehicles cannot reasonably be dismantled or disassembled.''

The balance of said sec. 133 then provides for details in connection with the issuance of the permit.

■ In view of these contentions it becomes necessary for us to construe the Act with reference to its applicability to plaintiffs' operations in as much as the plaintiffs contend that the Act is not meant to be applicable to them in this case.

■ At the outset of our construction of this act we are confronted with the proposition that at common law the owner of the soil over which a highway, outside of the boundaries of a city or village, is located is entitled to the entire use of the land except the right of the public to use the land and materials thereon for the purpose of building and maintaining a highway suitable for the safe passage of travelers. *Postal Telegraph-Cable Co. v. Eaton,* 170 Ill. 513; *Glos v. Holmes,* 228 Ill. 436; *Simpson v. Adkins,* 386 Ill. 64. The latter case referred to reviews a great many of the earlier decisions.

■ The Act in question is entitled, ''An Act In Relation to the Regulation of Traffic,'' approved July 9, 1935 [Ill. Rev. Stat. 1949, ch. 95½, par. 98 *et seq.;* Jones Ill. Stats. Ann. 85.130 *et seq.*]. It has been held to be a remedial statute and should be liberally construed in order to carry out the true intent and meaning of the legislature. *Stine v. Union Elec. Co. of Illinois,* 305 Ill. App. 37. It contains numerous defini-

tions. In par. 18 of the Act "traffic" is defined as follows: "Pedestrians, ridden or herded animals, vehicles, street cars, and other conveyances either singly or together while using any highway for purposes of travel." The act has numerous subdivisions which provide for right of way, traffic signals, accidents, reckless driving, speed, passing and over-taking, turning and stopping, parking, rights of pedestrians, equipment, safety tests and the size, weight and loads of vehicles. Paragraph 71 of the Act provides that a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on same highway. Paragraph 119 (b) of the Act, in prohibiting certain operations, makes a specific exception to the operation of vehicles across the entire road to reach adjacent lands.

The obvious purposes of the Act in question are twofold, namely, (1) to protect the safety and lives of the traveling public and (2) to achieve public economy in highway costs. The courts take judicial notice that use of the highways by vehicles of excessive weight and size will result in injury to public property and danger to travelers. Therefore, the legislature has the power to regulate the maximum weight of vehicles using the highways. These propositions have been settled in the case of the *People v. Linde,* 341 Ill. 269. At pages 274 and 275 of said opinion, the court uses the following language: "As to the public streets, the right to use them *for purposes of travel* is not an absolute and unqualified one." (Italics ours)

We next turn to the question of whether or not the legislature intended by Article XVI of the Act in question to regulate crossings of the highways. It is a familiar rule of statutory construction that the court should ascertain and give effect to the intent of the legislature; and that such intent should be found, if possible, from the wording used and the objectives

413

to be attained. *Karlson v. Murphy,* 387 Ill. 436; *People ex rel. Nelson v. Olympic Hotel Bldg. Corp.,* 405 Ill. 440, 444. Another familiar rule of construction is that statutes in derogation of the common law cannot be construed as changing the common law beyond what is expressed by the words of such statutes or necessarily implied from what is expressed and that it will not be presumed that an innovation was intended further than that which was specified or clearly to be implied. *Hamilton v. Baugh,* 335 Ill. App. 346, at page 351. In the Act in question, the definition of "traffic" as already pointed out is confined to the use of the highway "for purposes of travel." Use of the highway for purposes of travel would ordinarily be upon and along the highway and not across it. If, therefore, the legislature intended to regulate the use of the highway for crossing purposes, it should have been made apparent from the wording of the statute. In none of the paragraphs of Article XVI are the words "across" or "crossing" employed. On the other hand, as above pointed out, certain paragraphs of the Act are clearly made applicable to crossings of the highway. The legislature has thus shown that when it seeks by the Act to regulate or prohibit a crossing of the highway, it has selected apt language to say so in clear terms. Thus, from its failure to so state in clear terms, it becomes apparent that the legislature did not intend the phrases "drive upon," "move upon," and "operate upon" in Article XVI to apply to driving across the highway.

 We hold that the operations being carried on by the plaintiffs in crossing the highway to reach their own property on adjacent lands are not within the purview of Article XVI of the Act, and that the defendant has no power to seek to prevent such use as is contemplated by the plaintiffs under the authority of that Act in question.

The only authority we find in the commissioner of highways pertaining to the operations being carried on by the plaintiffs is sec. 167 of the Roads and Bridges Act, being chapter 121, Illinois Revised Statutes 1949 [Jones Ill. Stats. Ann. 120.163]. This section relates to the subject of injuring or obstructing roads. On this question, however, the findings of the court below, which are amply supported by the evidence, to the effect that the operations of the plaintiffs do not constitute an unlawful encroachment or obstruction upon the road and do not interfere with the easements of the public in and to said highway, together with the provisions in the decree assuring that the plaintiff will continue to respect the rights of the public, are conclusive in this case. We think the decree of the court below was entirely correct and should be affirmed.

The decree in the court below was entered and filed on September 8, 1950, and within twenty days from that date defendant filed his notice of appeal and an order of that court was entered allowing the appeal without bond. Before the case was submitted on oral argument the defendant had filed a motion in this court for a supersedeas. The ruling on this motion was taken with the case. This motion for supersedeas is now denied.

*Decree affirmed.*

SCHEINEMAN, P. J., and CULBERTSON, J., concur.