**STATE of Missouri, Respondent,**

v.

**Fred Leroy HALL, Appellant.**

No. 23414.

Kansas City Court of Appeals.

Missouri.

Nov. 6, 1961.

O. T. Thomsen, Kansas City, for appellant.

William A. Collet, Pros. Atty., Jackson County, Kansas City, for respondent.

HUNTER, Presiding Judge.

The defendant, Fred Leroy Hall, crossed over a public road within his employer's plant area in Jackson County with one of his employer's trucks. He was arrested, charged and tried on the misdemeanor charge of driving and operating a motor vehicle "over and upon" a public highway in Jackson County, Missouri, without displaying on the rear thereof a registration plate bearing a number from the Director of Revenue of the State of Missouri. Upon trial to the court on a stipulation of facts he was found guilty "of driving on the highway without a license" and fined $10.00 and costs. This appeal followed. The question presented is one of first impression in this state.

The pertinent evidence is recited in the following stipulation of facts:

"The defendant, at the time of his arrest, was in the employ of the Stewart Sand and Material Company, a Missouri corporation, which owns and operates certain rock mining property known as the Pixley Plant, located in Jackson County about one and one-half miles east of Independence, Missouri, outside of the city limits. The property includes a large mine, rock crusher, concrete plant, railway loading facilities, office and scales. The highway in question, Truman Road ('formerly Spring Branch Road); passes through the plant property and is located upon lands owned in fee by the Stewart Sand and Material Company. The mine and rock crusher are on the north side of the road or highway; the scales, office, concrete plant, and railway loading facilities, etc., are on the south side of the highway.

"The defendant, at the time of his arrest, had been in the employ of the Stewart Company as a truck driver for approximately nine years. His employer owns a considerable number of trucks which go upon the highway, all of which bear regular license or registration plates. It also owns several stone trucks (generally three or four) which are used only upon the company premises for hauling rock from the mine to the crusher or from the crush-

er to the concrete plant or perhaps to load a railroad car. These stone trucks do not bear highway license plates. At the time of the defendant's arrest, he was operating one of his employer's stone or rock trucks at its Pixley Plant, hauling rock to the concrete plant on the opposite side of the highway, and, in doing so, crossing the highway with the stone truck. Such trucks might travel a considerable distance upon a rock road within the Stewart Company premises before it becomes necessary to cross the highway. The stone trucks generally move directly across the highway but might move along the road for a short distance for a better place to get off. The location of the highway at the Pixley Plant does not serve any purpose for the stone trucks. They go upon it only to get across it.

"No record has been found of any right-of-way deed to the State of Missouri or of any proceedings to establish a highway upon the property in question, and the existing highway easement apparently was established by prescription or permissive use only.

"The arresting officer testified that at the time of the arrest the defendant drove on the highway, moved along it about 150 or 200 feet, and then moved off to the opposite side. The defendant did not operate the truck upon the highway at any point beyond his employer's plant area covered by deed recorded in Book 1210, page 264, at Independence, Missouri.

"The property owned by the defendant's employer at this location, through which Truman Road passes, has been operated continuously as a rock mining and crusher operation for 50 years, or more, during which time the operators crossed the road with operating vehicles. Motor vehicles used only in the plant area have never borne license plates. The defendant's employer, the Stewart Company, has operated the property since 1930, first as a lessee, and during the past five years as owner. (End of stipulation.)"

The transcript recites: " * * * The parties agree * * * the question * *, whether a truck of the Stewart Company operated across such roadway, within the limits of the plant area, is required to bear a state registration plate."

"Defendant's attorney: Is it Your Honor's suggestion the stone trucks therefore could cross the highway without a license, in the event they go directly across and not move along it in any degree?"

The trial judge stated "for a man to cross the road to get from one part of his property to another, * * * (he) should not be required to procure a state license to travel across the road, but when they get out upon the highway and travel any distance up and down the highway, I feel it is not up to this court to determine what distance a man has to travel along the highway to require him to buy a license."

Section 301.020 provides: "Every owner of a motor vehicle or trailer, which shall be operated or driven upon the highways of this state" shall file with the director of revenue an application of registration.

Section 301.130(5) RSMo 1959, V.A.M.S., provides: "Before being operated on any highway of this state every motor vehicle or trailer shall have displayed the license plates or temporary permit issued by the director * * *." Section 301.440 provides that upon conviction punishment is by fine of from $5.00 to $500.00 or by imprisonment in the county jail not exceeding two years, or both.

It is appellant's contention that the owner of land through which a highway passes may make any use of it which does not interfere with public travel or proper police regulation, including crossing over it, and that the Motor Vehicle Licensing Law is

inapplicable to the facts before the court. The Prosecuting Attorney of Jackson County has not favored us with either an appearance or a brief.

■ It is the general rule that a highway across a landowner's property is merely an easement. The title or fee to the lands occupied by it remain in the landowner. "The landowner continues to enjoy all of the rights of property incident thereto, subject only to the rights of travel and use as a highway vested in the public." Sikes v. St. Louis & S. F. R. Co., 127 Mo. App. 326, 105 S.W. 700, 703. Williams v. Natural Bridge Plank Road Co., 21 Mo. 580. In 39 C.J.S. Highways § 142, page 1083, is stated: "The owner of land through which a highway passes has a right to make any reasonable use of the highway which does not interfere with the enjoyment of the public easement." In the instant case there is no such interference involved and none is charged. Nor is there any denial of the power of the legislature within constitutional limits, to impose penalties for operating on public highways motor vehicles which have not been licensed and registered.

It is clear that unless the statute cited made it unlawful for the defendant to drive, as described in the evidence, across the highway without a license displayed on the truck his conviction must be set aside. Thus, a construction of Section 301.130 (5) RSMo 1959, V.A.M.S., is necessary.

■■ In the construction of any statute the primary purpose is to ascertain the legislative intent. That intent should be found, if possible, from the wording used and the objectives to be obtained. A criminal statute is not to be held to include offenses or persons other than those which are clearly described and provided for both within the spirit and letter of the statute, and, if there is a fair doubt as to whether the act charged and proved is embraced within the prohibition, that doubt will be resolved in favor of the accused.[1]

The nature and general purpose of the license statute has been discussed in State ex rel. McClung v. Becker, En Banc, 288 Mo. 607, 233 S.W. 54, 55, "* * * the registration fees * * * must be paid * * * into * * * the state road fund * * *. It is therefore avowedly a revenue measure. The owner of such vehicle may operate it on his own premises without being subject to the payment of the registration fee imposed by the statute. In such case he will pay the general property tax. The state maintains roads and bridges at great expense and exacts a license fee for the privilege of driving or operating these high-powered vehicles thereon. It is clear, therefore, that the registration fee is not a tax on the vehicle but upon the privilege of operating it on the highways of the state." See, also, State v. Tustin, Mo. App., 322 S.W.2d 179, 182(4–6).

In Northern Illinois Coal Corp. v. Langmeyer, 342 Ill.App. 406, 96 N.E.2d 820, 823, the Illinois Court was presented with a somewhat similar statute for interpretation. The Illinois statute provided, "It is unlawful for any person to drive or move" (any vehicle over a certain size and weight) and, "No vehicle * * * shall be operated * * * upon the highways" if its axle weight exceed certain poundage. In ruling the case in favor of the defendant the court said, "At the outset of our construction of this act we are confronted with the proposition that at common law the owner of the soil over which a highway, outside of the boundaries of a city or village, is located is entitled to the entire use of the land except the right of the public to use the land and materials thereon for the purpose of building and maintaining a highway suitable for the safe passage of travelers. * * * Use of the highway for

---

1. Sec. 556.040, RSMo 1959, V.A.M.S., provides: "The term 'misdemeanor,' as used in this or any other statute, shall be construed as including every offense punishable only by fine or imprisonment in a county jail, or both."

purposes of travel would ordinarily be upon and along the highway and not across it. If, therefore, the legislature intended to regulate the use of the highway for crossing purposes, it should have been made apparent from the wording of the statute. * * * the legislature did not intend the phrases 'drive upon,' 'move upon,' and 'operate upon' in Article XVI to apply to driving across the highway. We hold that the operations being carried on by the plaintiffs in crossing the highway to reach their own property on adjacent lands are not within the purview of * * * the act, * * *." See, also, 60 C.J.S. Motor Vehicles, § 63, pages 242–243.

■ After considering the words of the statute and its purpose, it is our conclusion that in using the words "operated on any highway" our legislature did not intend to prohibit a landowner whose land is split into two pieces by a public highway from going across such public highway in his truck in order to get from one piece of his property to the other. This is not such a use of the vehicle on the public highway as to require a license on the vehicle so moved. The license or registration fee is not a tax upon the vehicle but upon the privilege of operating it on the highways of the state. The public road in question was a barrier to defendant's employer in getting from one part of its land to another and defendant in the course of his employer's business of necessity had to cross over it to get to its property on the other side. In crossing over the road defendant was not exercising or endeavoring to exercise the privilege of operating upon or using a public road in the sense contemplated by the legislature.

We need not here be concerned as to what the result would be if defendant had chosen to drive on and along the highway for any substantial distance and beyond that which reasonably could be said to be a part of his crossing movement. He went on the highway in order to cross it. While the evidence shows the truck moved along the highway for 150 or 200 feet it also indicates this was occasioned by the circumstances present in order for defendant to get across it. The distance was so short and the surrounding circumstances were such that the 150 or 200 foot movement was but a part of the crossing movement and inconsequential in nature. We are convinced that the legislature in its wisdom did not intend to impose criminal liability under such circumstances. Legislatures are not to be presumed to have intended harsh or unreasonable results beyond the apparent purpose of the statute involved and the necessary meaning of the words used therein.

The judgment is reversed.

All concur.