**STATE of Missouri, Appellant,**

v.

**Russell N. PICKETT, Respondent.**

**No. KCD 27668.**

Missouri Court of Appeals,
Kansas City District.

March 29, 1976.

John C. Danforth, Atty. Gen., Daniel P. Card II, Asst. Atty. Gen., Jefferson City, William G. Johnson, Prosecuting Atty., Morgan County, Versailles, for appellant.

David R. Hardy, William G. Zimmerman, Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD, and SOMERVILLE, JJ.

SOMERVILLE, Judge.

By information in the Circuit Court of Morgan County, defendant was charged, as follows, with a misdemeanor:

" . . . did . . . unlawfully, wilfully, refuse to permit a Deputy Boat Commissioner . . . to board a boat owned by the said Russell N. Pickett, during the daylight hours, for the purpose of making an inspection to determine compliance with the provisions of Sections 306.250 to 306.290 RSMo., *all in violation of Section 306.280 RSMo. . .*" (Emphasis added.)

Pursuant to Rule 25.06, defendant, by written motion, moved to dismiss the information. He predicated dismissal on several grounds, one of which lends itself to being paraphrased as follows: His refusal to permit a deputy boat commissioner to board his boat to make an inspection to determine compliance with Sections 306.250 to 306.290, RSMo,[1] was not proscribed by Section 306.280, RSMo Supp.1973; hence the information failed to charge him with commission of a criminal offense. On November 12, 1974, the trial court sustained defendant's motion to dismiss the information and dis-

charged him. It did so on the basis that it lacked "jurisdiction" to proceed because the information failed to "allege a criminal offense".

The state, as authorized by Rule 28.04, appealed.

The state concedes on appeal, and correctly so, that the trial court "lacked jurisdiction" to proceed *if* the information failed to "allege a criminal offense". *State v. Muchnick,* 334 S.W.2d 386 (Mo.App.1960); and *State v. Hasler,* 449 S.W.2d 881 (Mo. App.1969). However, it refuses to concede that the information charging defendant failed to "allege a criminal offense". On the other hand, defendant contends that the law compels both concessions by the state. Thus, the principal issue on appeal is joined.

Section 306.280, supra, reads as follows: "All boats located upon waters of this state are subject to inspection by the water pollution board or by a deputy boat commissioner during daylight hours for the purpose of determining compliance with the provisions of sections 306.250 to 306.290." Section 306.250, supra, defines "Boats" and "Marine toilets"; Section 306.260, supra, with certain exceptions, prohibits boats from discharging sewage into the water; Section 306.270, supra, requires that marine toilets have suitable treatment devices; and Section 306.290, supra, provides that "[a]ny person guilty of violating any of the provisions of sections 306.250 to 306.290 shall be guilty of a misdemeanor."

According to the state, Section 306.280, supra, "clearly and necessarily implies" that defendant's refusal to allow a deputy boat commissioner to board and inspect his boat constituted a criminal act within the ambit of said statute. The state's reasoning takes the following course—since it is apparent that Section 306.280, supra, creates a "limited right of inspection during daylight hours for the purpose of checking compliance with the sewage disposal laws", "it is equally apparent that the only possible way to violate the statute would be to refuse to permit the inspection or to physically impede

---

1. Sections 306.250, 306.270, 306.290, RSMo1969. Section 306.260, RSMo Supp.1973.

the inspector." Granting that it is apparent that the statute creates a "limited right of inspection", it is equally apparent that the statute is silent as to how the right of inspection is to be implemented, and, if there be such a thing as degrees of silence, even more silent with respect to the imposition of penal sanctions upon the owner or operator of a boat who refuses to permit inspection. Words to the effect that the owner or operator of a boat shall "permit", "allow", "consent to", "not refuse", or "not interfere with or impede" the right of inspection, or words of comparable meaning, are nowhere to be found in Section 306.280, supra.

■ Criminal statutes lay down a code of conduct for people to live by, and when violated subject transgressors to penal sanctions that variously run the gamut from the imposition of fines to the deprivation of personal liberty. As the complexities of society become more and more pronounced, more and more criminal statutes are passed, with the end result, in many instances, that the innocent act of yesterday constitutes criminal conduct today. The ever-continuing proliferation of new criminal statutes, affecting more and more aspects of societal conduct, has served to firm up a continuing commitment by the courts to stringent principles of construction for construing statutes claimed to embrace criminally punishable conduct. Such statutes are strictly construed against the state and liberally construed in favor of an accused. *State v. Chadeayne,* 323 S.W.2d 680, 685 (Mo. banc 1959); and *State v. McClary,* 399 S.W.2d 597, 599 (Mo.App.1966). A criminal offense is not created unless expressly written into the statute claimed to be its source, or so clearly, plainly and necessarily implied by the language employed therein that a court can fairly say that such offense is proscribed "beyond all rational doubt". *State v. Dougherty,* 358 Mo. 734, 216 S.W.2d 467, 471 (1949); *State v. Hall,* 351 S.W.2d 460, 463 (Mo.App.1961); and *State v. McClary,* supra. Clarity of meaning in criminal statutes is a requisite in order that both the wary and the unwary may know whether they are engaging in proscribed conduct.

When the meaning of a statute purporting to prohibit certain conduct is riddled with doubt, such doubt is resolved in favor of an accused. *State v. Dougherty,* supra; and *State v. Hall,* supra.

■ One thing is certain. Section 306.-280, supra, does not expressly delineate that owners or operators must permit or allow their boats to be boarded and inspected upon request by the water pollution board or a deputy boat commissioner or run the risk of incurring penal sanctions if they refuse to do so. Nor does this court believe that the controversial statute employs language implying such "beyond all rational doubt". In order to construe this statute as embracing the offense for which defendant was charged, speculation and conjecture would have to be indulged and the stringent rules of construction heretofore iterated would have to be ignored.

A striking parallel exists between Section 306.280, supra, and a penal ordinance of the City of St. Louis which was the vortex of an appeal in *City of St. Louis v. Evans,* 337 S.W.2d 948 (Mo.1960). Section 14 of the Building Code of the City of St. Louis provided that building commissioners and their designated agents or subordinates, "[w]hen necessary in the performance of duty", were empowered to enter structures and buildings, and if entrance was denied, they could "invoke the aid of the police department to enforce such right". Section 56 of the Building Code provided a penalty for "any violation" of a provision of the code for which no penalty was "elsewhere fixed". Prosecution was initiated by informations against the owner and janitor of a building for refusing to permit a designated agent of a building commissioner to enter said building for the purpose of "performing his duties as inspector". The City of St. Louis appealed from judgments of dismissal entered. The Supreme Court, in affirming the judgments of dismissal, l. c. 953, said:

"*We think it is clear that Section 14 imposes no duty to admit such officials as are referred to therein and that it does not purport to prohibit a denial of such*

*right of entry.* The section purports to be a mere grant of the right of entry to the officials mentioned, when necessary in the performance of duty and it purports to tell the official what to do if such right of entry be denied. *It does not make the act of denial an offense, nor impose such a duty upon anyone to grant permission so as to make such a denial a violation of this particular section.* While the section provides that in the event that 'such right of entry be denied * * * such official may invoke the aid of the police department to enforce such right,' the method of enforcement is not specified, whether by force to open the premises, break down the doors, obtain a warrant or other legal authority to enter, or to arrest some one for obstructing an officer in the discharge of his duty." (Emphasis added.)

Whatever legislative intent may be embodied in Section 306.280, supra, must be perceived from what the legislature expressly said or from what can necessarily be implied "beyond all rational doubt" from the language it employed, and not from what this court speculates the legislature may have intended to say or inadvertently failed to say. So viewed, Section 306.280, supra, does not embrace the conduct which defendant was charged with and the attempt by the state to predicate criminal prosecution thereon must fail.

By so disposing of this appeal, it becomes unnecessary to decide, even though tendered as an issue both here and below by defendant, whether Section 306.280, supra, attempts to sanction a significant intrusion upon a right constitutionally protected by the Fourth Amendment to the Constitution of the United States and Article I, Section 15, of the Missouri Constitution.

Judgment affirmed.

All concur.

