**STATE of Missouri, Plaintiff–
Respondent,**

**v.**

**Dwayne C. HOPKINS, Defendant–
Appellant.**

**No. 18132.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 30, 1992.

Gary E. Brotherton, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Judge.

A jury found the defendant, Dwayne C. Hopkins, guilty of the class D felony of leaving the scene of a motor vehicle accident. § 577.060, RSMo Supp.1989. His punishment was assessed at imprisonment in the county jail for six months and a $2,500 fine. He appeals; we affirm.

## ISSUES ON APPEAL

The defendant raises two issues on appeal: (1) The sufficiency of the evidence to support his conviction, and (2) whether the trial court committed "plain error" in giving a jury instruction defining "proof beyond a reasonable doubt" because it allegedly allowed the jury to convict the defendant on a degree of proof below that required by due process.

## STANDARD OF REVIEW

In deciding the sufficiency of the evidence issue, "we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences." *State v. Seeger,* 725 S.W.2d 39, 40 (Mo.App.1986). "The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that appellate was guilty." *Id.*

Regarding the alleged instructional error, the defendant made no objection to Instruction No. 4, patterned after MAI–CR3d 302.04, which defines "proof beyond a reasonable doubt." Accordingly this issue can only be examined under the plain error standard of Rule 30.20.[1] Under this standard the defendant must show "manifest prejudice affecting his substantial rights" as a prerequisite to obtaining relief. *State v. Hornbuckle,* 769 S.W.2d 89, 93[2] (Mo.banc), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989).

## FACTS

Viewed in the light most favorable to the verdict, the evidence established that on the evening of November 2, 1991, the defendant, while driving a motor vehicle east on Highway 66, struck the rear end of the victim's car. At the time the victim, Jerry West, was also driving easterly, maintaining a speed of approximately 55 miles per hour. The impact knocked the victim's car to the right shoulder where it stopped. The defendant's car swerved to the left, into the center median, where it momenta-

rily came to a stop. The defendant then drove his car (a red Ford Mustang) into the westbound lane of Highway 66, headed west to a "break" in the median, made a U-turn and returned to the accident scene, stopping in front of the victim's vehicle.

After twice falling back into the driver's seat as he attempted to get out of his vehicle, the defendant finally got out of his car, approached the victim and said, "[L]et me give you my card and we can go on. I've done this before, it works all right." The victim saw nothing resembling a card in the defendant's hand at the time. Because the victim believed the accident was more severe than "just a little bump," his response to the defendant's insurance card comment was, "[L]et's wait until the patrolman gets here." The defendant then started back toward his car, saying he "was going to get in his car and warm up." The victim followed, telling the defendant "not to leave because it could be very severe." The defendant responded, "[f]___ you." He then got back in his car and drove off.

Within ten to fifteen minutes after the accident, trooper Michael Bryan arrived at the scene. From the victim or his family members, the officer obtained the details of the accident, vehicle description, license number, and description of the defendant. He found the defendant's vehicle about two miles from the scene where it had been abandoned. Bryan smelled an odor resembling alcohol in the defendant's vehicle; the floorboard on the passenger's side was wet and smelled of alcohol. Bryan's search of the defendant's vehicle revealed no insurance card, registration, or other evidence of ownership.

Both the defendant and his passenger, Paul Glover, testified. The defendant admitted that he was driving his automobile when it struck the rear of the victim's vehicle. He testified that he was "scared" and "shook up" because the victim would not accept his card; that his passenger, Glover, was hurt, and he left to take Glover home. About two miles from the accident

---

**1.** Rule 30.20 provides, in pertinent part, "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

scene, the defendant's car quit running. Thereupon the defendant and Glover walked to a nearby house where they called Glover's mother. She then picked them up and took them to their respective homes.

Nothing of the accident was reported by the defendant to anyone; rather, the following morning the defendant filed a report with law enforcement officials that his car had been stolen during the previous evening. During his "stolen car" conversations with various officers, the defendant said nothing about the accident even though he was told that trooper Bryan was looking for him. At trial he testified he filed the false report because he was "scared" and "nervous." When asked, "[D]id you leave Mr. West ... any information to where he could track you down after you left," the defendant answered, "No, I tried and he didn't take it, so I guess not."

## SUFFICIENCY OF EVIDENCE ISSUE

■ In Point I the defendant insists that the evidence was insufficient to support the verdict. His challenge to submissibility seems to be two-fold.

First the defendant argues that the evidence is undisputed that the defendant stopped at the accident scene as soon as practicable under the circumstances. He then asserts that the plain language of § 577.060.1 [2] "criminalizes leaving an accident scene without stopping *and* giving identifying information"—language which "is framed conjunctively and not disjunctively." Because the state's evidence clearly shows that the defendant did stop, the defendant argues that the state has failed to prove each element of the offense and his conviction should be reversed.

■ Charitably described, that argument is frivolous. In *State v. Dougherty,* 358

Mo. 734, 216 S.W.2d 467 (1949), our supreme court recognized and declared the purpose of "leaving the scene of an accident" legislation as follows:

The obvious purpose of the statute is to prevent "those controlling and operating automobiles from concealing their identity by immediate flight from the scene of [the] accident"; " * * * to obtain * * * information * * * of a nature which will identify him readily"; " * * * to prevent drivers from seeking to evade prosecution by escaping before their identify can be determined"; and " * * * to sufficiently establish the identity of the parties so that they and police authorities may know with whom to deal in matters growing out of the accident."

*Id.* at 474 (citations omitted).[3] *Dougherty* makes it clear that the controlling purpose of this statute is the *disclosure* of the party's identity and *not* the bringing of the vehicle to a complete stop. The interpretation contended for by the defendant—that as a matter of law the mere stopping of a motor vehicle with no disclosure of information is sufficient compliance with the law to avoid prosecution—has no merit and is rejected.

■ Second, the defendant argues that the state did not prove its case beyond a reasonable doubt because "[the defendant] ... complied with the requirement that he identify himself." He asserts that he "did all he could reasonably do to make his identity known to [the victim] before leaving the accident scene to care for his friend." This argument is based upon the defendant's testimony that he approached the victim and offered to exchange insurance cards—an offer which the victim declined. Instead the victim suggested that they wait for a highway patrolman. From

---

**2.** § 557.060.1, RSMo 1989 Supp., in pertinent part, reads: "A person commits the crime of leaving the scene of a motor vehicle accident when being the ... driver of a vehicle on the highway ... and knowing that ... damage has been caused to property, due to his culpability or to accident, he leaves the place of ... damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and driver's license number, if any, to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer."

**3.** "In *Dougherty*, the court considered § 8401(f), RSMo 1939, the predecessor statute to § 577.-060.... The prior statute and the present statute are worded almost identically and it can be readily observed that the legislative intent within both is identical." *State v. Floyd*, 657 S.W.2d 265, 266 (Mo.App.1983).

that evidence the defendant claims that "[the defendant's] identity would have been determined if [the victim] had accepted the offered insurance card," and that under those facts the state should not be permitted to claim a violation of the statute.

There was sufficient evidence adduced by the state to enable the jury to conclude that the defendant never disclosed his identity to the victim nor to any police officer. Indeed, the defendant acknowledges that in his argument by saying, "His identity would have been determined if [the victim] had accepted the offered insurance card." Although the defendant testified that as he approached the victim to offer him his insurance card he had identified himself as Dwayne Hopkins, the victim denied such identification had occurred. The jurors were not obliged to believe the defendant's testimony. The credibility and weight of a witness's testimony are for the jury to determine. *Seeger*, 725 S.W.2d at 43. The defendant's offer to exchange insurance cards was conditioned upon nondisclosure of the accident to law enforcement officials, a condition to which the victim would not accede because of the seriousness of the accident.

Then, despite an admonition from the victim not to leave, the defendant left the scene of the accident without having disclosing his identity. When his vehicle quit running, he and his passenger telephoned for a ride home. He and his passenger were then taken to their respective homes without seeking any medical help for the alleged injuries to the passenger.

Never did the defendant report the accident to a law enforcement official. Instead, the morning following the accident he falsely reported the theft of his vehicle and persisted in that story after learning that the highway patrol wanted to talk with him about the accident. There was ample evidence from which the jury could have found the defendant was seeking to evade prosecution by leaving before his identity was determined, an act proscribed by the statute. *Dougherty*, 216 S.W.2d at 474[12]. From this record the evidence is sufficient to sustain the defendant's conviction within the intent and purpose of § 577.060. The defendant's point is denied.

## BEYOND A REASONABLE DOUBT INSTRUCTION

The defendant's second point is that the trial court erred when it submitted Instruction No. 4, patterned after MAI–CR3d 302.-04, which defines "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." Because no objection to Instruction 4 was lodged at trial, the defendant requests plain error review pursuant to Supreme Court Rule 30.20.

Relying on *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), he argues that instructing the jury with the foregoing definition of "proof beyond a reasonable doubt" rose to the level of manifest injustice or miscarriage of justice because the instruction allowed the jury to find guilt based on a degree of proof below that required by the due process clause. In making his request for plain error review, the defendant recognizes that our supreme court has rejected the same challenge to the standard of proof instruction in cases where the claim was preserved for appellate review. *See State v. Griffin*, 818 S.W.2d 278, 282 (Mo.banc 1991). Nevertheless he raises the point to preserve it "in the event that a federal court renders a decision contrary to *Griffin*."

Because the defendant's point, even if preserved, would be governed by *Griffin* and not by *Cage*, we expressly refuse to review the defendant's claim about the standard of proof instruction. *State v. Howell*, 838 S.W.2d 158, 163 (Mo.App.1992). The defendant waived his claim of error by his failure to preserve the error; we decline to exercise our jurisdiction to review under the plain error rule.

We affirm.

PARRISH, C.J., and CROW, P.J., concur.