**STATE of Missouri, Respondent,**

v.

**Larry JACKSON, Appellant.**

No. 62078.

Supreme Court of Missouri, Division No. 2.

Dec. 15, 1980.

James L. McMullin, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Larry Jackson, appellant herein, was charged with and found guilty by a jury of murder in the first degree, robbery in the second degree, and armed criminal action, for which he was sentenced to life imprisonment, imprisonment for thirty years, and life imprisonment respectively.

By his first point (as set forth in his amended brief) appellant asserts that the trial court erred in failing to grant his motion for acquittal "for the reason that the evidence was insufficient for a jury to find beyond a reasonable doubt that [he] was present at the time the murder occurred in view of the fact that [his] alibi witnesses were uncontradicted and unimpeached and that, as a result, the State failed to prove beyond a reasonable doubt that [he] robbed and killed the victim."

We first note that it is immaterial that appellant's alibi witnesses were uncontroverted and unimpeached. The credibility and weight of testimony are for the jury to determine, State v. Dodson, 490 S.W.2d 92, 95 (Mo.1973), and a jury may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case. State v. Holt, 592 S.W.2d 759 (Mo. banc 1980); State v. Lawrence, 605 S.W.2d 98 (Mo.1980); State v. Morris, 564 S.W.2d 303 (Mo.App.1978). We shall, however, review the evidence to determine whether or not a submissible case was made.

About 9:00 o'clock of the morning of April 5, 1979, Pauline Hassett left her apartment building. When she left she called to her brother, Jerry Willard Han, who was in his basement apartment, that she was leaving and he answered her. When Mrs. Hassett returned at approximately 10:30 o'clock that morning the street door of the apartment building was locked and showed no signs of forced entry, but inside the building she found a newspaper on a chair beside the door which was not there when she left. She then found her brother, not in his apartment where he was when she left but in the bedroom of her apartment. His hands had been tied with an electric cord, a pillow was over his head, and he had been shot in the head. The drawers to a dresser were on the bed, some jewelry of hers was missing, and there were also missing three or four rings that belonged to Bill Massey which she was holding as security for a loan. She also found in the bedroom a cigar box in which she

kept change and which was regularly kept in the office of the apartment building. It had been emptied of its contents.

Mrs. Hassett kept a rifle in the office of the apartment building. After the homicide two spent cartridges were found which had been fired from that rifle. On the newspaper which was found on the chair near the door were the prints of appellant's left ring finger.

On the day that Jerry Han was killed Earl Ramsay received a telephone call from appellant and was told to "watch the news" and that "it was something he had to do." The following day appellant went to the Ramsay's house. He had with him a "bag of jewelry," and he told Ramsay that "he had killed a man" by shooting him in the head with a rifle," and "that's where the jewelry had came from." He also stated that he "had cleaned the rifle off, and the only way they could get him was to get his fingerprints off the door." In the "bag of jewelry" was a pocket watch, a man's ring with a "black face," and a gold wedding band with three diamonds. Appellant attempted to sell the man's ring to Effie Ramsay without success, but she sold the ring for appellant to Freddie Taylor for $20 and gave appellant the money. Earl Ramsay took the watch and wedding ring and sold them to Opal Ramsay, his grandmother, for $20 which he gave to appellant. Bill Massey identified both rings as being two of the rings he had given to Mrs. Hassett as security for a loan. Mrs. Hassett identified the pocket watch as hers and testified that all three items had been in the drawer in her bedroom, but were missing after the homicide.

The proof of the commission by someone of a homicide was not based on circumstantial evidence, but the identity of appellant as the one who killed Jerry Han was based in part on such evidence. The statements of appellant to Earl Ramsay constituted direct evidence. *State v. Scaturro*, 509 S.W.2d 491 (Mo.App.1974). When all the evidence is considered, both direct and circumstantial, it clearly authorized a jury to find that appellant shot and killed Jerry Han while engaged in a robbery. The trial court properly refused appellant's motion for judgment of acquittal.

Appellant's challenge to his conviction of robbery in the second degree, the underlying felony in the charge of murder in the first degree, must be sustained. *State v. Olds*, 603 S.W.2d 501 (Mo. banc 1980). Also appellant's conviction of the offense of armed criminal action admittedly arose out of the occurrence which constituted murder in the first degree, and appellant's challenge thereto must be sustained. *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980).

That part of the judgment pertaining to murder in the first degree is affirmed; those parts of the judgment pertaining to robbery in the second degree and to armed criminal action are reversed and the sentence imposed as to each charge is vacated.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

All of the Judges concur.