STATE of Missouri,
Plaintiff-Respondent,

v.

Franklin Lyle TETER,
Defendant-Appellant.

No. WD 32529.

Missouri Court of Appeals,
Western District.

March 2, 1982.
Motion for Transfer Denied
May 4, 1982.

David M. Strauss, Public Defender, 13th Judicial Circuit, Columbia, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Defendant Franklin Lyle Teter appeals his conviction following a jury trial on charges of manslaughter in violation of § 565.005 [1], and leaving the scene of a motor vehicle accident in violation of § 577.-060. The jury's verdict imposed respective sentences of six years pursuant to § 565.031 and two years pursuant to § 558.011.1(4). We affirm.

Shortly after midnight on May 9, 1980, Officer Joe Fagiolo, Columbia, Missouri, Police Department, who was stopped at a red light and heading in an easterly direction, observed an automobile, driven by Teter in a northerly direction, make a right-hand turn at the intersection. The automobile then turned to the left and accelerated rapidly making a fishtail U-turn approximately sixty feet east of the intersection and stopped facing west at the red light. Officer Fagiolo turned on his red lights, entered the intersection and motioned for the driver to pull back from the intersection. Accelerating rapidly, the automobile made a left turn in front of the patrolman, fishtailed and, squealing its tires, proceeded south in the northbound lane. Because May 9 was graduation day at the University of Missouri, traffic was moderate to heavy. The officer pursued the vehicle and observed him run a red light in another intersection, striking an eastbound motorcycle. The motorcyclist, Dale Hendricks, was thrown from his vehicle. Although the automobile lost its chrome rim, a wheel hub, and the glass in the passenger window and the windshield was cracked, the driver accelerated away from the scene of the accident. He did not apply his brakes. The motorcyclist died later.

Officer Fagiolo stopped to aid the victim, but other police continued the chase at speeds up to 90 miles per hour which ended some 8.2 miles from the scene of the accident when the automobile's engine malfunctioned. Teter testified that at the accident scene he heard a noise and felt pieces of glass hitting him but continued accelerating not realizing that the police were in pursuit.

---

1. All sectional references herein are to Revised Statutes of Missouri, 1978.

At the trial, over Teter's objection the court admitted into evidence a photograph of Mr. Hendricks, depicting him before the accident. The police officer who witnessed the accident and the pathologist who performed the autopsy identified the victim from the photograph which was later passed to the jury, again over Teter's repeated objections.

The state's evidence also included the testimony of Fran Fleenor, who stated that shortly before the accident Teter told her that "he liked to get patrol cars to chase him and then lose them". Ms. Fleenor testified that Teter told her that he thought he would "do that tonight".

On appeal, Teter contends that the trial court erred: (1) in denying Teter's motions for judgment of acquittal at the close of the state's evidence and at the close of all the evidence because the state did not present sufficient evidence to prove the charges, (2) in admitting into evidence and passing to the jury the photograph of the victim, and (3) in permitting Ms. Fleenor to testify to statements allegedly made by Teter concerning his past actions.

■ Our duty, in reviewing the evidence, is not to substitute our judgment for that of the jury but to determine only whether the evidence, considered in the light most favorable to the state and disregarding evidence to the contrary, is sufficient to make a submissible case. *State v. Sloan*, 548 S.W.2d 633 (Mo.App.1977).

■ Teter maintains that the evidence does not show, beyond a reasonable doubt, that he acted with a reckless disregard for human life and safety. Section 565.005 [2] requires proof of a killing of a human being by act, procurement or culpable negligence. In *State v. Manning*, 612 S.W.2d 823, 825–26 (Mo.App.1981), the court defined culpable negligence:

> The rule is well established that negligence to be deemed culpable within the meaning of the manslaughter statute is something more than ordinary, common law, or actionable negligence. The culpability necessary to support a manslaughter charge must be so great as to indicate a reckless or utter disregard for human life. *State v. Morris*, 307 S.W.2d 667, 672 (Mo.1957). The fundamental requirement to fix criminal responsibility for the consequences of culpable negligence is knowledge actual or imputed that the negligent act would tend to endanger human life. *State v. Morris*, 307 S.W.2d at 672. Culpable negligence "means disregard of the consequences which may ensue from the act, and indifference to the rights of others. No clearer definition, applicable to hundreds of varying circumstances that may arise, can be given." *State v. Kays*, 492 S.W.2d 752, 760 (Mo. 1973).

According to the record, Teter drove at excessive speeds in the lane of on-coming traffic in moderate to heavy traffic making illegal turns and ignoring traffic signals. Such conduct undoubtedly constitutes disregard of the possible consequences of his act and indifference to the rights of others.

■ Teter also maintains that the elements of § 577.060 [3] are not proven because there is no evidence that he "knew" that an injury had been caused to a person or that damage had been caused to property. Missouri's Supreme Court in *State v. Dougher-*

**2.** 565.005.
Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter.

**3.** 577.060.
1. A person commits the crime of leaving the scene of a motor vehicle accident when being the operator or driver of a vehicle on the highway and knowing that an injury has been caused to a person or damage has been caused to property, due to his culpability or to accident, he leaves the place of the injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and chauffeur's or registered operator's number, if any, to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer.
2. Leaving the scene of a motor vehicle accident is a class D felony.

**420**

ty, 358 Mo. 734, 216 S.W.2d 467, 472 (1949), noted that " 'knowing', as used in the statute,[4] means actual knowledge, or such notice as would put one on inquiry, and more than mere negligence in failing to know, or the mere presence of facts which might have induced the belief in the mind of a reasonable person." The record indicates that Teter, who was traveling at a high rate of speed through an intersection against the warning of the light, heard a loud noise and felt "something flying onto my—onto me." The windshield was cracked, and one side window was smashed. Parts of his automobile fell off. Certainly the jury was entitled to infer that Teter not only knew that he had collided with some object but, at the very least, knew he had damaged property. *State v. Ulrich*, 316 S.W.2d 537 (Mo.1958); *State v. Hudson*, 314 Mo. 599, 285 S.W. 733, 734 (1926).

Next, Teter contends that the court erred in admitting into evidence a photograph of the victim taken prior to his injury and death and erred again in passing that photograph to the jury. Teter argues that because the photograph had no bearing on the issue of his guilt, he was denied a fair trial. Moreover, the probative value of the photograph, depicting the victim as an "attractive, wholesome young man", was, according to Teter, outweighed by its prejudicial effect of arousing the jury's sympathy so that a higher sentence would be imposed.

■ "A photograph as demonstrative is admissible if it corroborates the testimony of the state's witness, or connects the defendant with the offense, or proves the identity of the victim, or throws light upon a material issue in the case." *State v. Foster*, 600 S.W.2d 207, 209 (Mo.App.1980). Generally the admissibility of photographs rests within the broad discretion of the trial court. *State v. Jackson*, 499 S.W.2d 467, 472 (Mo.1973).

4. The court was construing § 564.450 (repealed):

564.450. *Leaving scene of motor vehicle accident.*—No person operating or driving a vehicle on the highway knowing that an injury has been caused to a person or damage has been caused to property, due to the culpability of said operator or driver, or to accident, shall

■ We find no abuse of discretion in the admission of the photograph. Count I of the indictment charged Teter with the unlawful "killing of Dale D. Hendricks". It was within the court's discretion to admit demonstrative evidence that the victim was Dale D. Hendricks. Moreover, since the admission of the photograph satisfies the rule as to admission of demonstrative evidence, the fact that the sight of it would tend to agitate the jurors is not sufficient cause to reject the evidence. *State v. Thresher*, 350 S.W.2d 1, 7 (Mo.1961), *State v. Wintjen*, 522 S.W.2d 628, 629 (Mo.App. 1975).

■ Teter's last point is that the testimony of Ms. Fleenor that Teter stated that he "liked to get patrol cars to chase him" was inadmissible in that the state cannot prove past criminal acts in an effort to support the inference that Teter was guilty of the charge for which he was being tried. The testimony of Ms. Fleenor was:

Q. (by Mr. Walther) Well, I would rather you said what he specifically said with regard to—

A. What he was going to do that night?

Q. Yes.

A. He said in fact that he was going to do that tonight, referring to—

Q. All right. What was he referring to?

A. Okay. When he said he like to jump patrol cars.

MRS. ASEL: Your Honor, I object—

THE COURT: I will have to overrule your objection now.

Go ahead.

Q. (by Mr. Walther) I didn't hear what you said.

A. He said he liked to jump up patrol cars, meaning that he liked to—

leave the place of said injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and chauffeur's or registered operator's number, if any, to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer.

MRS. ASEL: Your Honor, I am going to object to her explaining.

A. No, he explained it to me in that he said that he liked to get patrol cars to chase him and then lose them because it was exciting, and he called that jumping up a cop car.

Q. (by Mr. Walther) And what did he say with reference to what he was going to do that night?

A. Okay. He said, "In fact, I think I'll do that tonight," and that's when I—it really startled me, you know, and I said, "You're kidding." And he didn't say anything for awhile. He said very matter of factly, "In fact, I'm going to do that tonight." In fact, he even repeated it. ...

This evidence was of a proposed commission of a subsequent offense. It bears directly on Teter's intent or motive as to the instant charge and is within the exception permitting proof to show motive or intent. *State v. Niehoff*, 395 S.W.2d 174, 180 (Mo. 1965), *State v. Tilcock*, 522 S.W.2d 60, 62 (Mo.App.1975).

For the foregoing reasons, the judgment of the trial court is affirmed.

All concur.