**STATE of Missouri, Respondent,**

v.

**Brian Keith SEEGER, Appellant.**

### No. 14438.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 10, 1986.

Motion for Rehearing or to Transfer
to Supreme Court Denied
Nov. 21, 1986.

Application to Transfer Denied
March 17, 1987.

Kathleen Murphy Markie, Columbia, for appellant.

William L. Webster, Atty. Gen., Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Brian Keith Seeger ("appellant"), found guilty by a jury of the class D felony of leaving the scene of a motor vehicle accident, § 577.060,[1] was sentenced as a prior offender, § 558.016.2, to three years' imprisonment. He appeals, insisting the evidence was insufficient to support the verdict.

In deciding that issue, we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v. Guinan,* 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald,* 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that appellant was guilty. *State v. Bonuchi,* 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560, 576–77 (1979).

Cast in that light, the evidence establishes that about 2:50 a.m., October 13, 1984, a Mazda GLC motor vehicle ran off highway 67 in Poplar Bluff, hit a ditch, struck a "portable" sign, and then collided with a pole supporting the "Bluff Estates Shopping Center" sign.

Someone at a nearby restaurant "called the accident in," and patrolman David A. Harkey of the Poplar Bluff police department arrived within minutes to investigate. In the "passenger front seat," Harkey found Harold John Grassham. According to Harkey, Grassham's "face was cut up and he had a lot of blood." In the rear seat, Harkey found Glenn Allen Wyatt. Harkey found no one else in the vehicle.

Observing that Grassham and Wyatt were "conscious," Harkey asked them who was driving the Mazda. Their responses caused Harkey to begin searching for appellant. Describing what he found, Harkey testified: "I found some blood on the pole at the corner of the Salt of the Earth building. The blood had dripped on the ground. And then there was some blood on the fence and it appeared someone had climbed the fence. And there was blood between Pizza Hut and Salt of the Earth building. It's a white picket fence and the poles are white.... [T]here was blood on this fence and scuff marks from shoes where it looked like somebody had tried to climb over the fence."

Harkey added that after Grassham and Wyatt had been taken to the hospital, he "searched extensively on foot at the rear of the building," but was unable to find appellant.

Asked about the damage to the Mazda, Harkey testified that the "front end" was "completely smashed in," and that the "entire front end, the windshield, part of the roof was all damaged." Regarding the signs, Harkey recounted that the portable sign was "completely damaged," and that there was "no way of ever repairing the ... Bluff Estates sign."

---

1. References beginning with "§" are to RSMo Cum.Supp.1984, except where otherwise indi- cated.

Some time later, Harkey found appellant at the hospital emergency room. There, appellant admitted to Harkey that he had been driving the Mazda at the time of the accident.

Grassham, testifying for the State, confirmed that appellant was driving the Mazda at the time of the mishap. Grassham revealed that he (Grassham) was "heavily intoxicated," and that just before the crash he "grabbed" the steering wheel and said, "Let's cut a doughnut." [2] Grassham explained, "[T]o cut a doughnut means to take and slide the car totally around in a three hundred sixty degree angle."

Asked whether he remembered the Mazda striking the pole, Grassham replied: "I remember the impact of the crash. That was about it. I remember waking up and blood all over me and then I went out again." According to Grassham, he sustained "some severe head injuries," and "chest injuries."

Grassham related that he had been with appellant since about 10:30 or 11:00 p.m., and that he (Grassham) did not see appellant "drink any alcoholic beverages."

Wyatt, also called as a State's witness, testified that he, like Grassham, was "drunk" when the accident occurred. Wyatt was nonetheless aware that appellant was driving, and that Grassham was "[i]n the front on the passenger's side."

Asked to tell the jury about the accident, Wyatt said, "All I know is that I—I didn't see [Grassham] grab the whell [sic], but all I know is when we hit the ditch and then I was out and then I woke up and they was taking me out of the car." Describing his injuries, Wyatt testified, "I fractured my spine in three places and I broke my shoulder and pushed this bone up into my chest."

Wyatt disavowed any knowledge of whether appellant had been drinking.

Appellant, age 20 at the time of the accident, gave this testimony at trial:

"... I remember [Grassham] saying that he wanted to cut a doughnut and he reached over and grabbed the steering wheel and he give it a jerk and we just took off to the right hand side.

. . . . .

Q. And what happened after that?

A. We struck a pole and went to the hospital.

Q. What happened when you struck the pole? Do you remember what happened when you struck the pole?

A. No, sir. I don't even remember leaving the road.

Q. Why is it you don't remember?

A. Well, I hit the dash with my chest and my head and blacked out and went unconscious.

Q. What happened after that?

A. Uhh, supposedly got out of the car somehow and went behind Wal-Mart and when I got behind Wal-Mart I realized I was sitting down in a puddle of water and blood was all over my hands and my arms and T-shirt and I started washing the blood and everything off and was trying to realize what the blood was doing all over me. And I got back up and started walking one way behind Wal-Mart and I don't remember getting to the end of the Wal-Mart parking lot.

Q. And what do you remember after that?

A. Being at Donna Wyatt's house.

Q. What happened at Donna Wyatt's house?

A. Well, as I got up to the door somewhere in the parking lot, Donna came out of the house and asked me where I had been and informed—said Glenn was in an accident and informed me, she said he was in an accident with me, and he was in the hospital and ... Grassham was in the hospital. And they wanted me to go to the hospital and then I really didn't think I was hurt and she said the best thing to do was go to the hospital because your head is bleeding quite a bit. And they put me in the car and took me to the Lucy Lee Hospital and I saw a cop sitting there and I said, 'Well, this looks

---

**2.** Appellant makes no contention that when Grassham seized the steering wheel, he (appel-

lant) ceased to be the "operator or driver" of the Mazda within the meaning of § 577.060.1.

like the end of my ride because I was in an accident. I'm going to jail.' And they took me in and took x-rays and blood samples and I forgot what they did. And Officer Harkey and another officer came in and told me I was under arrest and read me my rights and told me I was under arrest for leaving the scene of an accident."

Appellant admitted drinking a beer about 5:00 p.m., some 10 hours before the accident, but insisted he had drunk nothing else. He maintained he was unaware he had been in a "wreck" until Donna Wyatt told him.

Donna Wyatt, the wife of Flynn Wyatt (a brother of Glenn Wyatt), testified that appellant came to her door around 3:00 a.m., and asked whether she had seen Glenn Wyatt and Grassham. According to Mrs. Wyatt, appellant "had no idea where they were at."

Describing appellant's physical appearance, Mrs. Wyatt explained that he had a cut on his forehead and was "slumped over." She added: "He ... didn't know what was going on or appeared to be that way. He was asking me questions about what had happened.... He didn't have any idea as to what was going on."

Based on her observations, Mrs. Wyatt opined that appellant was "sober."

Flynn Wyatt saw appellant for approximately five minutes at the hospital. According to Flynn, "[Appellant] was, uhh, crying because, you know, I told him, you know, I thought my brother's back was broke and that his arm was paralyzed, and he was just ... I thought he was in shock."

Appellant's assignment of error is:

"The trial court erred in denying appellant's motion for judgment of acquittal made at the conclusion of the evidence because the evidence was insufficient to support a conviction of leaving the scene of an accident in that there was no evidence presented by which the trier of

fact could conclude that the appellant knew that Glenn Wyatt and ... Grassham had been injured or that damage had occurred to the car he was driving or to any signs in the Bluff Estates Shopping Center, so that the element of knowledge could not reasonably have been found."

Section 577.060.1, as pertinent to appellant's contention, provides:

"A person commits the crime of leaving the scene of a motor vehicle accident when being the operator or driver of a vehicle on the highway or on any publicly or privately owned parking lot or parking facility generally open for use by the public *and knowing that an injury has been caused to a person or damage has been caused to property*, due to ... accident, he leaves the place of the injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and chauffeur's or registered operator's number, if any, to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer." (Emphasis added.)

■ The thrust of appellant's argument is, in his words: "Appellant contends that because there was no evidence that appellant knew his passengers were injured, or that the car that he had been driving or the signs at the shopping center had been damaged, the state failed to establish the element of knowledge required for this cause of action, and hence the evidence was insufficient to convict him."

The element of "knowledge," as a component of the crime of leaving the scene of a motor vehicle accident, is discussed in *State v. Dougherty*, 358 Mo. 734, 216 S.W.2d 467 (1949). The opinion states:

"We think the word 'knowing,' as used in the statute,[3] means actual knowledge

---

**3.** The pertinent statute at the time of the offense in *Dougherty* was § 8401(f), RSMo 1939, which provided: "No person operating or driving a vehicle on the highway *knowing that an injury has been caused to a person or damage has been*

*caused to property*, due to ... accident, shall leave the place of said injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and chauffeur's or registered

rather than mere constructive knowledge, or such notice as would put one on inquiry, and more than mere negligence in failing to know, or the mere presence of facts which might have induced the belief in the mind of a reasonable person." *Id.* 216 S.W.2d at 472[6].

That standard was applied in *State v. Teter*, 633 S.W.2d 417 (Mo.App.1982). There, an automobile operated by the accused was being pursued by police. During the chase, the accused's vehicle struck a motorcycle, throwing the cyclist off and inflicting injuries that ultimately proved fatal. The accused's vehicle lost a rim and a wheel hub, and the glass in the passenger window and the windshield was cracked. The accused accelerated from the accident scene and was eventually apprehended over eight miles away. He was convicted of manslaughter and leaving the scene of a motor vehicle accident. On appeal, he maintained that the evidence was insufficient to sustain a conviction of the latter offense, in that there was no proof he "knew" that an injury had been caused to a person or that damage had been caused to property. The contention was rejected. The opinion pointed out that the accused admitted hearing a loud noise and feeling "something flying onto my—onto me." As the windshield was cracked, one side window was smashed, and parts of the accused's automobile fell off, the court held the jury was entitled to infer that the accused not only knew that he had collided with some object but, at the very least, he had damaged property. *Id.* at 419–20[3].

Factors analogous to those in *Teter* are present in the instant case. Appellant, by his own testimony, admitted knowing that Grassham grabbed the steering wheel, causing the Mazda to veer to the right. Appellant also admitted knowing he hit the "dash" with his chest and head. Additionally, appellant testified he realized, when he was sitting behind Wal-Mart, that there was blood "all over" his hands, arms and shirt. It was so extensive that he attempted to wash it off.

It is evident that neither appellant nor his passengers were bleeding before Grassham seized the steering wheel. Consequently, the jury could have reasonably inferred that when appellant became aware, behind Wal-Mart, that he had blood on him, he would have had to realize that the blood had gotten there between the time Grassham seized the wheel and the time appellant discovered the blood.

It is, of course, manifest that appellant made a swift exit from the Mazda after the crash, as he was gone by the time officer Harkey arrived. The blood and scuff marks on the white picket fence were sufficient to support an inference that appellant, after the accident, was alert enough not only to free himself from the Mazda, but also to scale the fence.

Furthermore, appellant had the mental acuity to make his way, on foot, from the accident site to the Wyatt residence and inquire about Glenn Wyatt and Grassham. It is also significant that appellant walked to the Wyatt home instead of attempting to return to the Mazda and drive there. The jurors could infer from that circumstance that appellant was aware the Mazda had been wrecked.

Appellant emphasizes that in his testimony, he denied knowing there had been an accident, that anyone had been injured, or that any property had been damaged until he contacted Mrs. Wyatt. The jurors, however, were not obliged to believe appellant's testimony. The credibility and weight of a witness' testimony are for the jury to determine, *State v. Jackson*, 608 S.W.2d 420, 421[1] (Mo.1980); *State v. Atkins*, 494 S.W.2d 317, 320–21[11] (Mo.1973), and the jury may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case. *Jackson*, 608 S.W.2d at 421[1]; *State v. Holt*, 592 S.W.2d 759, 774[24] (Mo. banc 1980). Additionally, appellant admitted he was not intoxicated, thereby eliminating drunkenness as a possible reason for his professed unawareness of what had occurred.

operator's number, if any, to the injured party or to a police officer, or if no police officer is in

the vicinity, then to the nearest police station or judicial officer." (Emphasis added.)

**44**

Citing *State v. Thornton*, 704 S.W.2d 251 (Mo.App.1986); *State v. Cook*, 697 S.W.2d 272 (Mo.App.1985); and *State v. White*, 665 S.W.2d 359 (Mo.App.1984), appellant reminds us that where the State relies on circumstantial evidence to establish guilt, the facts and circumstances must not only be consistent with each other and with the hypothesis of guilt, but they must also be inconsistent with the accused's innocence and point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence.

That principle, while unassailable, does not aid appellant here. In the three cases relied on by appellant, the evidence clearly established that crimes had been committed. The crucial issue in each case was whether the accused was the culprit.

Here, it is undisputed that appellant was the driver of the Mazda when the accident occurred, that the accident caused injury to appellant, Grassham and Glenn Wyatt, and also caused damage to property (the Mazda and two signs), and that appellant fled the accident site without giving any information to anyone. The sole issue on which appellant's guilt hinges is whether, when he left the scene, he knew the crash had occurred and knew that someone had been injured or that property had been damaged. In short, the sole fact question is one of appellant's knowledge.

Intent is a state of mind and usually is not susceptible to direct proof; intent may and generally must be established by circumstantial evidence. *State v. Ludwig*, 609 S.W.2d 417, 418[1] (Mo.1980); *State v. Chevlin*, 284 S.W.2d 563, 566[4] (Mo.1955). Knowledge, of course, is also a state of mind and, like intent, is rarely susceptible to direct proof. That does not mean, however, that the circumstantial evidence of appellant's knowledge is insufficient to satisfy the test of *Thornton, Cook* and *White*.

As noted at the outset, we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences. Gauged by that standard, the evidence, in our opinion, is sufficient to support a finding that

appellant, when he left the accident scene, knew that the Mazda had been in an accident and knew that he, or one of his passengers, had been injured.

In addition to the evidence already discussed, appellant conceded at trial that he had "a felony conviction for possession of marijuana" and "a misdemeanor conviction for stealing." When he saw the police at the hospital, appellant, by his own admission, said he would be going to jail. The jury could reasonably infer from that evidence that the fear of being jailed because of the accident motivated appellant to leave the scene, rather than await the police.

Appellant's assignment of error is denied, and the judgment is affirmed.

GREENE, P.J., and MAUS, J., concur.

## ON MOTION FOR REHEARING OR, IN THE ALTERNATIVE, TO TRANSFER TO SUPREME COURT

PER CURIAM.

Appellant, evidently stimulated by footnote 2 of our opinion, has filed a motion for rehearing or, in the alternative, to transfer this cause to the Supreme Court of Missouri, in which he asserts, *for the first time*, that the testimony that Grassham seized the steering wheel just before the crash negates the element of appellant's being the "operator or driver" of the Mazda within the meaning of § 577.060.1, RSMo Cum. Supp.1984. Appellant maintains that "the absence of evidence of such an essential element constitutes plain error under Rule 29.12."

Subject to certain exceptions not pertinent here, allegations of error which are not briefed on appeal will not be considered by the appellate court, except that plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom. Rule 30.20, Missouri Rules of Criminal Procedure (17th ed. 1986). We find no manifest injustice or miscarriage of justice in the circumstances here. Appellant did not try the case below,

or brief it here, on the theory that the evidence failed to establish that he was the operator or driver of the Mazda. Instead, his hypothesis was—in the words of his brief—that "because there was no evidence that appellant knew his passengers were injured, *or that the car that he had been driving* or the signs at the shopping center had been damaged, the state failed to establish the element of *knowledge* required for this cause of action, and hence the evidence was insufficient to convict him." (Emphasis added.)

The so called "plain error" now urged by appellant was evidently not as plain as he would have us believe, as it apparently occurred to him only after reading our opinion. The motion for rehearing or, in the alternative, to transfer the cause to the Supreme Court is denied.