**STATE of Missouri, Respondent,**

v.

**Randy ALLEN, Appellant.**

**No. WD 42317.**

Missouri Court of Appeals,
Western District.

Oct. 30, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1990.

Application to Transfer Denied
Jan. 9, 1991.

David S. Durbin, Appellate Defender, Terri L. Backhus, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and SHANGLER and GAITAN, JJ.

KENNEDY, Judge.

Appellant Randy Allen was convicted upon jury trial on the charge of leaving the scene of a motor vehicle accident in violation of § 577.060, RSMo 1986. The court entered judgment in accordance with the verdict and sentenced appellant to a five-year term of imprisonment. He has appealed to this court and raises the following two allegations of error: (1) that the trial court erred in striking the testimony of defense witness Tommy Allen; and (2) that the evidence was insufficient to support the verdict.

I.

We consider first appellant's allegation that the trial court erred in overruling his motion for judgment of acquittal and his motion for judgment notwithstanding the verdict. In deciding this issue, we consider the evidence and all reasonable inferences supportive of the verdict in the light most favorable to the verdict, and disregard those portions of the record contrary to a finding of guilt. *State v. Seeger*, 725 S.W.2d 39, 40 (Mo.App.1986); *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald*, 661 S.W.2d 497, 500 (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985); *State v. Turner*, 623 S.W.2d 4, 6 (Mo. banc 1981), *cert. denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982); *State v. Strickland*, 609 S.W.2d 392, 395 (Mo. banc 1980). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that appellant was guilty. *Seeger*, 725 S.W.2d at 40; *State v. Bonuchi*, 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *State v. Kelly*,

539 S.W.2d 106, 109 (Mo. banc 1976); *State v. Eaton*, 504 S.W.2d 12, 16 (Mo.1973).

Viewed in that light, the evidence establishes that at around 5 o'clock on the evening of July 23, 1988, 5-year-old Rodney Lollis and several other children were riding their bikes near 59th and Lawn in Kansas City, Missouri. When the children got to the corner of the street, 11-year-old Karana McReynolds signaled for the children to stop, but Rodney, who was riding his Big Wheel, continued on into the intersection. Rodney's Big Wheel collided with the driver's side door of an automobile being driven westbound on 59th Street. Upon impact, the Big Wheel exploded into pieces and flew up into the air. Rodney was dragged down the street under the car for approximately 25 yards.

Harry Gumby was coming out of the side door of his house when his attention was diverted by a "loud noise" in the street in front of his house. Gumby turned and saw a white vehicle coming west on Lawn and dragging a little boy underneath it. Gumby testified that the loud noise was the vehicle's initial point of impact with Rodney. The noise, Gumby said, was "[l]oud enough for me to turn around and look and see what was happening." Gumby saw Rodney being carried on the front of the car and then fall under the car and come out the back end of the car. After Rodney came out from underneath the car, the car "kind of hesitated" and then took off. Gumby testified that the car's hesitation was as if the brakes were momentarily applied.

Rodney's head was crushed under the wheels of the vehicle. He appeared dead at the scene. He suffered severe head injuries which consisted of a skull fracture and hemorrhages of the brain. The official cause of death was "multiple blunt injuries to the head, chest, and abdomen."

Approximately one week after the accident, 10-year-old Sonya Striplin was at the home of her grandmother, Carolyn Allen, when she heard some of her family members talking about "a little boy who got hit

by a car." Dennis Striplin asked appellant whether he had hit the little boy. Sonya testified that appellant answered, "Yes." Sonya's grandmother, Carolyn Allen, then asked, "What about the car?" Appellant's brother, Chris Allen, answered, "Let's blow it up." Appellant was outside when his family members talked about blowing up his car. Later, Chris Allen left alone in appellant's car, and appellant left in a second car with Tommy Allen and Dennis Striplin. Appellant, Tommy Allen and Dennis Striplin eventually came back to the house in the same car they were driving when they left the house. Chris Allen, however, did not come back in appellant's car; he came walking back to the house. Sonya testified that she never saw appellant's car again.

On July 29, 1988, police discovered appellant's white, two-door 1975 Mercury Marquis burning on 350 Highway, about three-quarters of a mile northwest of Bannister Road. Two days earlier, on July 27, appellant went to the Lake of the Ozarks. Appellant was driven to the lake by Elizabeth Mathews, who also drove appellant's brothers, Chris and Tommy Allen. Mathews testified that only appellant remained at the lake, and she, Chris and Tommy immediately drove back to Kansas City.

Appellant remained at the lake until August 11, 1988, when his parents surrendered him to police. At the police station, appellant stated that he had been at 59th and Lawn at around the time of the accident on July 23, 1988. Appellant told a detective that "he hit what he thought was a bump in the road, a chuckhole or something, slowed down a little bit, and continued on over to ... his brother's house." Appellant stated that he realized the Thursday following the accident that he had hit the little boy. Investigator Clarence Gibson of the Kansas City, Missouri police

department testified that appellant stated that he "[w]ent to the Ozarks" once he realized he was a suspect in the case. Appellant also indicated that his brothers took his car and "were going to dispose of it." Appellant denied that he was involved in his brothers' disposal of the car.

Appellant argues that the evidence was insufficient to establish the required mental state for a conviction under § 577.060.1,[1] that he *knowingly* left the scene of the accident. That statute provides that the offense of leaving the scene of an accident is committed only where a defendant leaves the scene "knowing that an injury has been caused to a person or damage has been caused to property." Thus, appellant particularly complains that the State failed to produce substantial evidence that he failed to stop "knowing" that he had been involved in an accident or had caused injury to the little boy.

In support of his argument, appellant cites the case of *State v. Dougherty*, 358 Mo. 734, 216 S.W.2d 467 (1949). In *Dougherty*, the Missouri Supreme Court, in construing the predecessor to § 577.060, discussed the element of "knowledge." The court stated:

> We think the word "knowing", as used in the statute, means actual knowledge rather than mere constructive knowledge, or such notice as would put one on inquiry, and more than mere negligence in failing to know, or the mere presence of facts which might have induced the belief in the mind of a reasonable person.

*Id.* 216 S.W.2d at 472.

That standard was applied in *State v. Teter*, 633 S.W.2d 417 (Mo.App.1982), and *State v. Seeger*, 725 S.W.2d 39 (Mo.App. 1986), both of which construed the meaning of "knowledge" under § 577.060. In both *Teter* and *Seeger*, it was held that the jury

1. Section 577.060.1, RSMo 1986, provides as follows:

A person commits the crime of leaving the scene of a motor vehicle accident when being the operator or driver of a vehicle on the highway or on any publicly or privately owned parking lot or parking facility generally open for use by the public and knowing that an injury has been caused to a person or damage has been caused to property, due to his culpability or to accident, he leaves the place of the injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and driver's license number, if any, to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer.

was entitled to infer that the defendants "knew" that they had been involved in accidents. In *Teter*, the defendant was being pursued by police when he struck a motorcycle and inflicted fatal injuries to the motorcyclist. The defendant's vehicle lost a rim and a wheel hub, and the glass in the passenger window was cracked. The defendant accelerated from the accident scene, but was eventually apprehended. Appealing his conviction for leaving the scene of an accident, the defendant argued that there was no evidence that he "knew" that an injury had been caused to a person or that damage had been caused to property. The court pointed out that the defendant admitted hearing a loud noise and feeling something flying onto him, and that the windshield was cracked, one side window was smashed and parts of his vehicle fell off. In light of this evidence, the court rejected the defendant's contention, and held that the jury was entitled to infer that the defendant not only knew that he had collided with some object but, at the very least, that he had damaged property. *Teter*, 633 S.W.2d at 419–20.

Similarly, the court in *Seeger* rejected the defendant's argument that he did not have the requisite "knowledge" to be convicted of leaving the scene of an accident. In that case, the defendant and a passenger were injured when the passenger grabbed the steering wheel, causing the defendant's car to swerve off the highway, strike a sign and collide with a pole. The defendant maintained that he did not know until later that there had been an accident, that anyone had been injured, or that property had been damaged. The court noted that the front end of defendant's car was completely smashed in, the windshield and part of the roof were damaged, and the sign that was struck was completely damaged. The court concluded that the evidence was sufficient to support a finding that the defendant, when he left the accident scene, knew that he had been in an accident and knew that he, or one of his passengers, had been injured. *Seeger*, 725 S.W.2d at 44.

▆▆▆ These authorities should be considered in conjunction with the general rule, well settled in Missouri, that "direct proof of the required mental state is seldom available and such intent is usually inferred from circumstantial evidence." *State v. Turner*, 623 S.W.2d at 7. "Knowledge, of course, is also a state of mind and, like intent, is rarely susceptible to direct proof." *Seeger*, 725 S.W.2d at 44. "Mental elements establishing that a defendant knowingly did an act may be proved by indirect evidence and inferences reasonably drawn from circumstances surrounding the incident." *State v. Abercrombie*, 694 S.W.2d 268, 271 (Mo.App.1985).

▆▆▆ Appellant contends that he did not know that he had hit the little boy until the Thursday following the accident. The jurors, however, were entitled to disbelieve that argument. "The credibility and weight of a witness' testimony are for the jury to determine . . . and the jury may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Seeger*, 725 S.W.2d at 43 (citations omitted). Guided by the preceding authorities, we hold that the evidence is sufficient to support the jury's finding that appellant, at the time he left the scene of the accident at 59th and Lawn, knew that he had been in an accident and knew that "injury ha[d] been caused to a person or damage ha[d] been caused to property." § 577.060.1, RSMo 1986. The evidence which establishes appellant's knowledge is as follows. Rodney's Big Wheel struck the driver's side door of appellant's automobile. The impact made a loud noise that was heard across the street by Harry Gumby. Upon impact, the Big Wheel disintegrated and pieces of it flew up into the air. Appellant's car dragged Rodney for approximately 25 yards, appellant hesitated, apparently applying his brakes, and then proceeded on. Appellant admitted hiding out in the Ozarks once he realized the police were looking for him. With his knowledge, his car was burned. This is evidence from which rational jurors could have found beyond a reasonable doubt that appellant was guilty. The State is not required to conclusively establish guilt nor exclude every hypothesis of innocence. *State v. Overkamp*, 646 S.W.2d 733, 737 (Mo.1983); *State v. Prier*, 634 S.W.2d 197, 199 (Mo. banc 1982).

We hold a submissible case was made that appellant left the scene of a motor vehicle accident in violation of § 577.060. This assignment of error is denied.

## II.

■ Appellant's other contention is that the trial court erred in striking the testimony of defense witness Tommy Allen. Appellant contends that this violated his Sixth Amendment right to compulsory process as guaranteed by the United States Constitution and Article I, section 18(a) of the Missouri Constitution. We agree.

At trial, appellant called his brother Tommy Allen as a witness on his behalf. Tommy Allen testified that he and his brothers Chris and Dennis had burned appellant's car. He testified that appellant took no part in the burning and was at the Lake of the Ozarks at the time the car was burned. He also testified that he informed appellant about the burning of the car on the Saturday following the burning. This testimony was exculpatory for appellant in the sense that it tended to negate appellant's guilty knowledge. The prosecutor, on cross-examination, rather than interrogate Tommy Allen about the substance of his direct examination testimony, instead employed a line of "inquiry" relating to whether Tommy Allen knew that it is a crime to destroy evidence and whether he had been given the *Miranda* warnings prior to testifying. After repeated questions along this line, Tommy Allen refused to testify and subsequently invoked his privilege against self-incrimination. The prosecutor moved to have Tommy Allen's direct examination testimony stricken, and the trial court granted the motion.

The pertinent trial record of the cross-examination follows:

PROSECUTOR: Mr. Allen, you realize that it's a crime in the State of Missouri to burn physical evidence?

A: No, I don't.

PROSECUTOR: Do you know that now?

A: No.

PROSECUTOR: Do you know that the statement you are making here today could be used against you in any court of law?

A: Yes, I do.

PROSECUTOR: Do you realize you have the right to an attorney?

A: Yes.

PROSECUTOR: You realize anything you say here today can be used against you?

A: Yes, I do.

PROSECUTOR: Would you like an attorney?

A: No.

PROSECUTOR: You would not?

A: I guess. I don't know.

PROSECUTOR: Because I don't want you to get up here and admit a crime. You know you have the right to an attorney; do you realize that?

A: Yes.

PROSECUTOR: Would you like an attorney?

A: Yes.

PROSECUTOR: Your Honor, I don't think I am going to ask him any more questions.

At the bench, the prosecutor moved that the testimony of Tommy Allen be stricken and that the jury be instructed to disregard it. The court then recessed. During that time, a special public defender was summoned to counsel Tommy Allen. After consultation, Tommy Allen decided to invoke his privilege against self-incrimination and refused to testify further. The court then sustained the prosecutor's motion and struck the entirety of Tommy Allen's testimony.

■ A criminal defendant's right to present witnesses in his defense is a fundamental element of due process. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 301, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). The Supreme Court has described this right as follows:

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present

the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

In *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), the Supreme Court reversed the appellant's burglary conviction because of the trial judge's "threatening remarks," which "effectively drove the witness off the stand." *Id.* at 98, 93 S.Ct. at 353. The trial judge, on his own initiative, undertook a lengthy and intimidating admonition of the witness about the dangers of perjury. This admonition was so severe that the witness refused to testify. "The fact that Mills was willing to come to court to testify in the petitioner's behalf, refusing to do so only after the judge's lengthy and intimidating warning, strongly suggests that the judge's comments were the cause of Mills' refusal to testify." *Id.* at 97, 93 S.Ct. at 353. The Court stated that "the unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Id.* at 98, 93 S.Ct. at 353. The Court held that this deprived appellant of due process of law under the Fourteenth Amendment.

The *Webb* decision was cited by the court in *State v. Brown*, 543 S.W.2d 56 (Mo.App. 1976). The facts of the *Brown* case are very similar to those involved in this case. In *Brown*, the prosecutor informed a defense witness that if he testified he could later be charged with a crime, asked the witness whether he had sought counsel, asked him if he had any desire to seek counsel, asked him if he was voluntarily testifying, asked him if he was familiar with the *Miranda* rights, etc. This line of inquiry by the prosecutor, the court stated, was "clearly designed to dissuade the witness from testifying." *Id.* at 59. The *Brown* court reversed the appellant's conviction. "The intimidating warning given

by the prosecutor in the case before us drove Mr. Burke from the stand and prevented the defendant from presenting a witness crucial to his defense. As in *Webb*, this practice must be condemned as depriving a criminal defendant of due process." *Id.*

We find this authority compelling. We hold that the prosecutor's warnings effectively drove Tommy Allen off the witness stand, thereby preventing appellant from presenting a witness crucial to his defense. The prosecutor's professed concerns about attempting to safeguard the constitutional rights of Tommy Allen are not well taken. The method employed by the prosecutor in this case, ostensibly to protect the rights of the witness, has been properly condemned by the court in *Brown*. A prosecutor is not allowed to intimidate a witness into not testifying and then benefit by having the witness's exculpatory testimony stricken. This deprives a criminal defendant of due process. Appellant's right to offer the testimony of witnesses on his behalf is guaranteed by the Sixth Amendment to the Constitution, and made applicable to the states through the Fourteenth Amendment. *See Washington v. Texas*, 388 U.S. at 18–20, 87 S.Ct. at 1922–1924. This right is also guaranteed in the Missouri Constitution, Article I, section 18(a), which provides: "That in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; ... to have process to compel the attendance of witnesses in his behalf; ..." The *Brown* decision stands for the proposition that it is fundamental that a criminal defendant must be permitted to present competent, material evidence in his defense. We hold that appellant's constitutional right to present witnesses in his own defense was impermissibly curtailed in this case. For that reason, the conviction must be reversed and the case remanded for a new trial.

Reversed and remanded.

All concur.