**STATE of Missouri, Plaintiff–Respondent,**

v.

**Robert G. ANDERSON, Defendant–Appellant.**

No. 58809.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 20, 1991.

J. Gregory Mermelstein, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant, Robert G. Anderson, was convicted of attempted forcible rape in violation of § 566.030 RSMo 1986, after a jury trial in the Circuit Court of St. Louis County. This appeal follows.

Defendant's only point on appeal alleges that the trial court erred in overruling his motions for judgment of acquittal at the close of the state's evidence and at the

close of all the evidence and in accepting the jury's verdict of guilty because the state's evidence showed that the defendant only attempted to rob the victim J.P., not rape her. We affirm.

Since we are asked to assess the sufficiency of the evidence used in convicting the defendant, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the guilty verdict, ignoring evidence and inferences which tend to disprove the defendant's guilt. *State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc 1987). Given this perspective, we examine the evidence to determine whether it was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that the defendant was guilty. *State v. Seeger*, 725 S.W.2d 39, 40 (Mo.App. 1986).

On March 28, 1989, at approximately 10:40 p.m., the victim, J.P. was walking down Country Stone Road, a street in the subdivision where she lived in St. Louis County, when she heard someone jogging up behind her. J.P. was wearing jogging pants, a t-shirt and a jeans jacket over the t-shirt. The area of Country Stone Road where she was walking was a quarter mile north of Big Bend. When J.P. heard someone coming toward her from behind, she turned and looked over her shoulder, trying to move out of the way. The defendant continued to move toward J.P.. When J.P. realized this she tried to turn around and run in the direction of an apartment complex nearby. The defendant grabbed J.P. in the shoulder area and tried to pull her into a wooded area which was located directly adjacent to one side of the pedestrian path.

A struggle ensued between the defendant and J.P., resulting in J.P. falling to the pavement in the street. J.P. fell on her buttocks with her legs straight out in front of her. The defendant knelt down right behind J.P., reaching his arms around her and putting his hands on the sides of her pants. The defendant then tried to push the pants of J.P. off as she struggled to keep the defendant's hands away. Once on the ground, the defendant said to J.P.: "Be quiet and hold still," but J.P. screamed continuously throughout the attack. At some point during the struggle, the defendant moved his hands and began rubbing the genital area of J.P..

J.P. finally broke free and ran toward the Waterford West apartments which were across Country Stone Road. J.P. ran toward the apartments because she saw people sitting on their porches. One of the apartment residents assisted J.P. and helped her call her brother. At about the same time someone called the police to report the screaming.

James Long, a resident of a nearby apartment complex testified that on the evening of March 28, 1989, he heard screams coming from the woods that were across Country Stone Road from where his apartment was located. Long went outside to investigate the screams and began walking in the direction of Country Stone Road. As he approached the road, Long heard the trees rustling in the woods. Following the noise in the woods, Long's presence was soon discovered by the individual who then started running. Long chased after him. Other residents of the nearby apartment complex joined Long in this chase, with the defendant finally falling down and giving up to the group.

The group that had been chasing the defendant then surrounded him and began asking him questions. The defendant had his head down and was sitting with his hands cupped, covering his genital area. At the conclusion of the questioning the defendant leaned back and pulled up his zipper. The group escorted the defendant to Valley Park Police Officer Bruce Bonney, who had responded at approximately 10:40 pm, to the report of screaming in the area. Officer Bonney was approached by the group of people holding the defendant and Bonney subsequently placed the defendant under arrest.

Officer Bonney originally thought the report had been for a simple assault, but when he placed the defendant in the back of his patrol car, the defendant volunteered: "Say, man, I wasn't trying to

rape her, I was just trying to get her purse." The defendant went on to say that when he saw that J.P. did not have a purse, he tried to take her pants down to see if she had a wallet. The defendant alleges that he was in severe financial problems and was trying to rob J.P. to obtain gas money.

Section 564.011.1 RSMo 1986, provides:

A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

■ The Southern District clarified the statute emphasizing that "[t]he statute does not require that a defendant's overt act be the ultimate step toward, or the last proximate or possible act in the consummation of the crime attempted." [Citation omitted]. *State v. Molkenbur*, 723 S.W.2d 894, 895 (Mo.App.1987). The defendant's specific intent to engage in sexual intercourse without consent, which is an essential element of attempted rape, may be proved by circumstantial evidence, because there is rarely direct evidence of the intent of a person charged with attempted rape. *State v. Ware*, 678 S.W.2d 863 (Mo.App. 1984).

■ From the evidence adduced at trial, a jury could have reasonably believed that the defendant intended to rape the victim. J.P. testified that the defendant attacked her while she was walking and tried to pull her into a wooded and secluded area. J.P. also testified that the defendant tried unsuccessfully to pull down her jogging pants but did place his hands in between her legs and rub her genitals. J.P. further testified that the defendant never asked her for money but instead told her to "be quiet and hold still." The defendant volunteered after he had been arrested by Officer Bonney that: "I wasn't trying to rape her, I was just trying to get her purse." Finally, when the defendant was caught by the group of citizens chasing him, he covered his crotch with his hands and he pulled up the zipper of his pants.

There is a "modern" trend to infer an intent to rape from an assailant's actions and we believe that the facts that were adduced at trial would be sufficient for a jury to find that the defendant attempted forcible rape on J.P. *See State v. Roden*, 674 S.W.2d 50, 53 (Mo.App.1984).

Judgment affirmed.

KAROHL and GRIMM, JJ., concur.