**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Gary R. PALMER, Defendant–Appellant.**

**No. 17421.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 6, 1992.

Motion for Rehearing or Transfer to Supreme Court Denied Jan. 21, 1992.

Application to Transfer Denied
Feb. 25, 1992.

Bradley S. Dede, Christophe P. Simms, James J. Knappenberger, Ross W. Buehler,

Brad B. Baker, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PARRISH, Judge.

Gary R. Palmer (defendant) was convicted of the class D felony of leaving the scene of a motor vehicle accident that resulted in physical injury to another person. § 577.060.[1] He was sentenced to imprisonment for a term of three years. § 558.011.1(4). This court reverses.

The information upon which defendant was tried alleged that defendant operated a motor vehicle that was involved in an automobile accident on or about June 18, 1990. It alleged that the automobile accident "caused a person to sustain personal injury, and defendant knew that such injury had occurred," and that "defendant left the scene of the accident without stopping and giving sufficient information by which the defendant could be readily identified and located, to [the injured] person or to a police officer in the vicinity or to the nearest police station or judicial officer."

1. References to statutes are to RSMo Supp.1988.

Defendant raises two points on appeal. The first point is dispositive. For that reason, only it will be addressed.

Defendant alleges that the evidence before the trial court was not sufficient to sustain his conviction of the crime charged. As explained in *State v. Seeger*, 725 S.W.2d 39, 40 (Mo.App.1986):

> In deciding that issue, we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald*, 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that appellant was guilty. *State v. Bonuchi*, 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560, 576–77 (1979).

At approximately 7:30 p.m., June 18, 1990, an automobile driven by Jessica Wilcox was proceeding in a northerly direction on a county road in Jasper County. As the car rounded a curve, the driver saw another vehicle, driven by defendant, "come around the corner really fast" on her side of the road. Jessica turned into a ditch. Her car was struck on the driver's side. Jessica "hit the windshield." She sustained cuts on her forehead that required stitches. She described her other injuries:

> Uh, I had a whiplash, and, uh, I had bruised, my nose was bruised, and I had bruises on my face,....

She was taken from the scene by ambulance. She did not see the automobile that struck her vehicle after the impact had occurred.

There was one passenger in Jessica's automobile at the time of the accident, Bryan Jones. Bryan saw the other automobile as it approached, "[a]nd it seemed to come into our lane, and we moved over, and then it hit us from the side." Bryan's head was cut and he "had a couple [of] bruises." He was asked the following questions and gave the following answers:

Q. All right. Right after the accident, uh, what did you do immediately after the accident, Bryan?

A. Uh, I checked her, Jessica, to see if she, how she was, and she was, seemed to be all right, and then I turned back to my left to check to see what the car was like, just, you know, what it was doing, and, uh, it seemed to stop for a second or so and then proceed on the other way.

Q. All right. And, uh, could you see the car all right from where you were?

A. Yes.

.    .    .    .    .

Q. When you had, uh, checked on Jessica very quickly and turned around to look at the other car, approximately how far away from you would the other car have been at that time?

A. I'd probably say like 50 to 75 feet.

Q. All right. And you could see the car?

A. Yes.

Jessica's car was damaged on the driver's side. The two doors on that side of the car were inoperable. The side windows by the driver "were all blown out." The back window was undamaged. The windshield was cracked.

When Bryan looked up the hill to where the other automobile had traveled, it appeared to be stopped. He thought its brake lights were shining. He could see the back of the other automobile and "probably the, the side of the driver's side, not the front." Bryan could not see the driver of the other automobile.

"[A] couple days later" Webb City Police Officers Philliber and Spencer located the other automobile that had been involved in the accident. It belonged to defendant. Officer Philliber described its condition:

Uh, the headlight was broken out, the, uh, front left quarter panel was pushed in to, uh, the, uh, inside quite a bit, uh, almost clear back to the door on one side.

No one was around the vehicle when Officers Philliber and Spencer first examined it. They failed to locate its owner at that time. Later, Officer Philliber received other information about the location of the automobile. He went to a residence where the car had been seen. Defendant was not there and the vehicle was gone. Officer Philliber talked to an occupant of the residence and left a message for defendant. Officer Philliber requested defendant to come see him. Later that day, defendant contacted the officer and arranged to meet him at the police department. Defendant gave Officer Philliber a written statement that was admitted in evidence at trial.[2] Defendant testified at his trial that he had been fishing the day of the accident. He related the following events as having occurred as he returned from fishing:

Q. Okay. When you got done fishing, what did you do?

A. I put my gear in the car and proceeded towards Webb City.

Q. Okay. What road did you take?

A. Old Elmhurst Road.

Q. Okay. Anything occur on your trip to Webb City?

A. Yes. I came through the curves going towards Webb City, and the last curve comes up and goes to the right, and as I was coming around that curve I was struck by something.

Q. Okay.

A. And I stopped and looked in my mirrors, and I didn't see anything, and I proceeded on to Webb City.

Q. Okay. In your opinion, were you speeding at that point when you hit something or something hit you?

---

**2.** The transcript filed as part of the record on appeal indicates that thirteen exhibits were admitted into evidence, including state's exhibit number 12, the statement of defendant. None of the exhibits were filed with this court.

A. No, sir. Uh, uh, that old car just barely carried itself. It wasn't much of a rig.

Q. Did you see what, what caused the impact?

A. No, sir, I did not. I did not see it.

Q. Approximately how far did you go before you stopped and looked?

A. I would say about 50 to 60 feet.

Q. When you stopped, what did you do?

A. I looked in the rearview mirror, and I looked in the side view mirror.

Q. What did you see when you looked in your mirrors?

A. Nothing, except the, the background of the, the scenery.

Q. Okay. At that point, uh, what did you assume had happened?

A. Well, I, I thought that I had been hit by a deer because I've lived in that area most of my life. I mean, my parents lived probably a hundred yards from where this accident took place, through high school, and there's a lot of deer out there, and I thought maybe I had struck one.

Near the end of the direct examination of the defendant by his attorney, he was asked again about what occurred immediately after the accident. The following questions were asked and answers given:

Q. It is true you don't have insurance though, right?

A. Uh, yeah.

Q. Is that the reason you didn't stop.

A. No.

Q. What is the reason you didn't stop?

A. Well, I did stop.

Q. Okay. Why is it that you didn't go back then?

A. Well, I didn't see anything to go back to.

Section 577.060, the statute that establishes leaving the scene of a motor vehicle accident as a crime, provides, in pertinent part:

A person commits the crime of leaving the scene of a motor vehicle accident when being the operator or driver of a vehicle on the highway or on any publicly or privately owned parking lot or parking facility generally open for use by the public and knowing *that an injury has been caused to a person* or damage has been caused to property, due to his culpability or to accident, he leaves the place of the injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and driver's license number, if any, to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer. (Emphasis added.)

Consistent with § 577.060, and with the information charging defendant with the crime, the following verdict-directing instruction [3] was read and given to the jury:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 18, 1990, the defendant operated a motor vehicle on a road travelled by the public at or near Carl Junction Road and County Road 24 in the County of Jasper, State of Missouri, and

Second, that while so doing the defendant was a party to an accident that caused injury to a person, and

*Third, that the defendant knew that such injury had occurred,* and

Fourth, that at the time of the accident or shortly thereafter the injured person was present at the scene of the accident and was able to receive information from the defendant, and

Fifth, that defendant left the scene of the accident without stopping and giving sufficient information by which the defendant could be readily identified and located to the injured,

then you will find the defendant guilty of leaving the scene of a motor vehicle accident.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

---

3. See MAI Cr. 3rd 331.10.

If you do find the defendant guilty of leaving the scene of a motor vehicle accident, you will return a verdict finding him guilty of leaving the scene of a motor vehicle accident. (Emphasis added.)

In his closing argument, the prosecuting attorney argued:

Instruction Number 5 is what we in the business refer to as a verdict directing instruction. It lists the elements that we must prove to you beyond a reasonable doubt. Okay. And it says that if we prove those elements to you beyond a reasonable doubt, then you shall find that Defendant guilty. It says, however, if we do not prove those beyond a reasonable doubt you shall find him not guilty. So, really, Instruction Number 5 is the instruction that lays out the different elements of the crime, and I want to go through that instruction with you now, time permitting, along with the evidence we've had here today.

. . . . .

Uh, the second element is that while so doing the Defendant was a party to an accident that caused injury to a person. We all know from the testimony here today that the Defendant, in fact, his vehicle collided with a vehicle of the young lady, and she was injured.

The third element is that the Defendant knew that such injury had occurred. We'll come back to that here in just a little bit.

The fourth element is that at the time of the accident or shortly thereafter the injured person was present at the scene of the accident and was able to receive information from the Defendant. I assume that's in there so that we don't have somebody laying unconscious somewhere, uh, and can't get information, so we don't charge somebody with not giving her information.

In contending that the defendant had knowledge that Jessica had sustained injuries, the prosecuting attorney argued:

Ladies and gentlemen, I'll get back into that in the second part of the close, but I suggest to you this: You can tell what's going through a person's mind, you can tell what frame of mind they are in and what they know or don't know, by their actions. This Defendant had been drinking, he had no insurance. He came up the hill, he broadsided that young girl, struck her right in the side of the car, and he didn't even stop. He knew by the force of that injury—by the force of that accident that somebody had been injured. You can tell by what he did.

What did he do? Oh, he did the brave thing—he took off driving down the road, leaving the folks to, to do whatever they were going to do down there, and luckily I guess only getting a cut on the head and some back injuries or neck injuries or whatever. That's what that Defendant did.

And in defendant's closing argument, his attorney focused on the issue that is now before this court on appeal. He argued:

But this case is not about whether or not there was an accident that resulted in an injury. It's about whether or not Mr. Palmer is guilty of a crime of leaving the scene of an accident. The crime itself is called leaving the scene of an accident, but it takes more than just to leave the scene of the accident. There was an accident, and he did leave, but it takes more than that. In order to be guilty of the crime of leaving the scene of an accident, a Class D felony, each one of these elements has to be proven to you beyond a reasonable doubt.

And Mr. Dally correctly focused on the third element of the verdict director, which is whether or not Defendant knew that such injury had occurred. I'd argue to the jury that that is where the dispute lies.

"The state has the burden of proving each and every element of a criminal case." *State v. Johnson*, 741 S.W.2d 70, 73 (Mo. App.1987). If the state failed to present evidence "from which rational jurors could have found beyond a reasonable doubt" that defendant knew that physical injury was caused as a result of the accident, it failed to prove that defendant was guilty of the offense. *See State v. Seeger, supra.*

The transcript contains no testimony of any witness regarding knowledge by defendant about any injuries sustained by Jessica Wilcox or Bryan Jones.[4] The state, by the prosecuting attorney's argument to the jury, contended defendant knew "by the force of the accident that somebody had been injured." Had the state charged in its information that defendant committed the offense of leaving the scene of the accident which resulted in damage to property "knowing that ... damage [had] been caused to property," that argument might be sound and the evidence adduced would have likely supported a guilty verdict. See State v. Teter, 633 S.W.2d 417, 419–20 (Mo.App.1982). However, defendant was not charged with leaving the scene of an accident knowing that property damage had resulted from the accident. He was charged with leaving the scene of an accident "knowing that personal injury had resulted from it." When an act constituting a crime is specified in the charge—in this case the Amended Information upon which the case was tried—the state is held to the proof of that act. State v. Edsall, 781 S.W.2d 561, 564 (Mo.App.1989).

The evidence adduced at trial was insufficient to show that the defendant knew that anyone was injured as a result of the accident. The case is reversed and defendant is ordered discharged.

PREWITT, P.J., concurs in principal and concurring opinions.

CROW, J., concurs in separate opinion filed.

CROW, Judge, concurring.

I concur.

Perhaps there is a reason the prosecutor elected to charge defendant with leaving the scene of an accident *knowing an injury had been caused to a person* instead of leaving the scene of an accident *knowing damage had been caused to property*. However, no such reason is apparent from the record.

I agree with the principal opinion's analysis that the evidence would have likely supported a guilty verdict had the latter charge been filed. Why the prosecutor chose to undertake the burden of proving defendant knew an injury had been caused to a person—an impossible task on the evidence here—defies explanation. While there are instances where it is possible to carry that burden of proof, State v. Seeger, 725 S.W.2d 39 (Mo.App.1986), the evidence was patently insufficient here.

Even if defendant's testimony is rejected as incredible (as was the jury's prerogative), State v. Jackson, 608 S.W.2d 420, 421[1] (Mo.1980), that does not aid the State. Assuming the evidence was sufficient to support a finding that defendant knew his vehicle had collided with Ms. Wilcox's vehicle instead of a deer, the record does not demonstrate the impact was severe enough to support an inference that defendant would have had to realize an occupant of the Wilcox vehicle could not escape injury.

On this record, defendant was charged with an unprovable crime. Reversal is mandatory.

4. In *State v. Dougherty,* 358 Mo. 734, 216 S.W.2d 467, 473 (1949), the court held that in absence of evidence that a defendant knew a passenger in a taxi cab with which an automobile he was driving had collided was injured, submitting a count that alleged such knowledge was error.