STATE of Missouri, Plaintiff–
Respondent,

v.

Dennis R. KEELER, Defendant–
Appellant.

No. 18362.

Missouri Court of Appeals,
Southern District,
Division One.

July 8, 1993.

Robert W. Richart, Joplin, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Saleeby, Hugh Marshall, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Judge.

The defendant, Dennis R. Keeler, was convicted of attempted kidnapping and sentenced to five years in the Missouri Department of Corrections. Among the issues he raises on appeal is the dispositive one, a challenge to the sufficiency of the evidence to submit the case to the jury. We reverse the trial court's judgment and order the defendant discharged.

## FACTS

On the morning of April 14, 1992, Angel Childers, a nine-year-old fourth grade pupil, having missed her school bus, was walking alone to school. She was walking east on the sidewalk on the south side of Central Street in Carthage, Missouri, when the defendant, driving his automobile west on Central, approached. Just after the defendant passed Angel he made a U-turn, pulled his car alongside her, and stopped. The defendant remained in his car, leaned over toward Angel, opened the passenger door, pointed to the passenger seat, and told her to get into the car. In Angel's words, "[H]e opened the door and told me to get in the car.... It was like an order, like parents order you."

Angel refused and quickly walked away. The defendant closed the car door and drove off. Angel ran to a nearby convenience store. The manager of the store, who described Angel as "very upset" and "crying," called the police and Angel's mother. Angel's mother testified her daughter was "shaken," "upset," and "scared" by the incident. Angel confirmed that she was frightened by the event.

A plain-clothes deputy sheriff in an unmarked car witnessed the encounter between Angel and the defendant. The deputy saw the defendant stop his car alongside Angel, lean over to the passenger side, and apparently say something to her. He saw Angel walk away at a "very rapid pace" and the defendant close the car door and drive off. The deputy followed the defendant. Near a school where he passed "other little girls," the defendant "would lean to the right and wave real big...."

The defendant drove indirectly to downtown Carthage where he parked his car near the square and entered a barber shop. The barber testified he "guessed" the defendant needed a haircut, but he said he did not significantly alter the defendant's appearance by cutting his hair. The barber said he had cut the defendant's hair "a month or two" earlier. Soon after the defendant left the barber shop, police arrested him. In a single count information, he was charged with attempted kidnapping.[1]

At the time of the incident, the defendant was 38 years old. He was a resident of

---

1. Section 564.011 describes the inchoate offense "attempt" as follows:

    1. A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A **"substantial step"** is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

Section 565.110 defines the offense "kidnapping" as follows:

    1. A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found or unlawfully confines another without his consent for a substantial period, for the purpose of

    (1) Holding that person for ransom or reward, or for any other act to be performed or not performed for the return or release of that person; or

    (2) Using the person as a shield or as a hostage; or

    (3) Interfering with the performance of any governmental or political function; or

    (4) Facilitating the commission of any felony or flight thereafter; or

    (5) Inflicting physical injury on or terrorizing the victim or another.

Section 556.061, RSMo Cum.Supp.1990, which sets out definitions applicable to the entire Criminal Code, refers to § 562.016 for the definition of relevant mental states. Section 562.016 provides, in pertinent part,

    1. Except as provided in section 562.026, a person is not guilty of an offense unless he acts with a culpable mental state, that is, unless he acts purposely or knowingly or recklessly or with criminal negligence, as the

Nashville, Tennessee, and was driving an automobile that displayed a Tennessee license plate. He and Angel did not know one another.

The court submitted the case to the jury using as a verdict directing instruction MAI–CR3d 304.06, modified as required by Notes on Use 4 to include the MAI–CR3d 333.00 definition of the object crime of kidnapping.[2] The defendant did not request a definition of *purpose,* and the court did not submit one to the jury. *See* MAI–CR3d 304.06, Notes on Use 6.

In his closing argument, the prosecutor referred to the "big, long definition of what kidnapping is" that appeared in the verdict directing instruction. He called the jury's attention to subdivision (e),[3] which, he said, "talks about taking somebody for the purpose of inflicting injury on or terrorizing the victim or another." The prosecutor did not identify for the jury any evidence related to subdivision (e).

The defendant was found guilty and sentenced to a term of five years in the Missouri Department of Corrections.

## DISCUSSION AND DECISION

On appeal, the defendant challenges the sufficiency of the evidence to support the verdict. We consider the evidence and all inferences reasonably drawn therefrom in the light most favorable to the verdict and disregard all contrary evidence and inferences. The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that the defendant was guilty. *State v. Marvel,* 756 S.W.2d 207, 209[3–4] (Mo.App.1988).

The state has the burden of proving "each and every element" of a criminal offense. *State v. Palmer,* 822 S.W.2d 536, 540 (Mo.App.1992). In the case before us, under §§ 564.011 and 565.110, the state was required to present evidence that (1) the defendant took a substantial step (2) toward unlawfully removing Angel from the place she was found or unlawfully confining her for a substantial period (3) for one of the purposes enumerated in § 565.-110.1.[4] *State v. Van Vleck,* 805 S.W.2d 297, 298–99 (Mo.App.1991). *See also State v. Gonzales,* 652 S.W.2d 719, 722–23 (Mo. App.1983). In his brief on appeal, the defendant relies in part on *Van Vleck* and *Gonzales.*

The defendant's acts of making a U-turn, pulling alongside Angel, opening his car door, and commanding her to get in provide evidence of his purpose to get her into the car and evidence of a substantial step to accomplish that purpose. These acts, coupled with a consideration of the very nature of a motor vehicle, imply the defendant's purpose to remove Angel or confine her.[5]

The state's case fails, however, because there is no evidence that the defendant

---

statute defining the offense may require with respect to the conduct, the result thereof or the attendant circumstances which constitute the material elements of the crime.

 2. A person **"acts purposely",** or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result.

 3. A person **"acts knowingly",** or with knowledge,

 (1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

 (2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

All statutory references in this opinion are to RSMo 1986 unless otherwise indicated.

**2.** With the exception of changes in capitalization and the substitution of letters for numerals to designate subdivisions, the definition of *Kidnapping* in MAI–CR3d 333.00 is identical to the statutory definition set out *supra* note 1.

**3.** Subdivision (e) in the instruction corresponds to subdivision (5) in § 565.110.1.

**4.** The consent aspect of § 565.110.1 is not an issue. Because of her age, Angel was incapable of consent. Section 565.100.3(1).

**5.** Because of our disposition of this case, we need not—and do not—offer an opinion about what span of time would constitute "a substantial period" for purposes of § 565.110.1.

performed these acts for one of the purposes enumerated in § 565.110.1. At trial, although the prosecuting attorney emphasized "inflicting physical injury" and "terrorizing the victim or another" as purposes for the jury to consider, he did not identify for the jury any evidence of those purposes. In its brief on appeal, the state concedes the necessity of its proving the defendant's purpose in removing or confining Angel,[6] and at oral argument the state suggests that the defendant's purpose was to commit a felony or to terrorize Angel. However, as at trial, the state points to no evidence in the record that supports these various suggested purposes on the part of the defendant.

The state insists at oral argument that the defendant's purpose is "inferable" from his actions in attempting to get Angel into his car and from "a certain interest in little girls" as indicated by his waving "real big" to "other little girls" as he drove through Carthage. The question remains: For what purpose?

Based on the record before us, to say that the defendant's purpose in getting Angel into his car was to commit a felony, to inflict physical injury on her, or to terrorize her or another is nothing but sheer speculation. While it might be argued that the defendant, an adult unknown to Angel, knew that a nine-year-old child's response, had she entered the defendant's vehicle, would have been one of terror, such knowledge, as defined in § 562.016.3, is not the requisite mental state of acting purposely, as defined in § 562.016.2.

While it is true that a defendant's purpose rarely is susceptible of direct proof, *Van Vleck*, 805 S.W.2d at 299, here there is no evidence from which a jury reasonably could infer the defendant's purpose. *Com-*

*pare State v. Spencer*, 671 S.W.2d 433 (Mo.App.1984) (defendant's statement to victim that he desired to engage in sodomy with her held sufficient to show purpose to commit a felony); *State v. Vitiello*, 791 S.W.2d 837 (Mo.App.1990) (defendant's statements to mother of victim that she would not see her child again unless she married defendant held sufficient to show his purpose to terrorize the mother); *Van Vleck*, 805 S.W.2d 297 (defendant's threat of violence to victim's child held sufficient to show defendant's purpose to terrorize the victim).

■ From the record, it appears the state might have made a submissible case of attempted false imprisonment. §§ 564.011 and 565.130.[7] However, the defendant was not charged with attempted false imprisonment. The state is held to proof of the elements of the offense it charged, not the one it might have charged. *Palmer*, 822 S.W.2d at 540–41. *See also State v. Long*, 802 S.W.2d 573, 576–77 (Mo.App. 1991).

We reverse the judgment of the trial court and order the defendant discharged.

PARRISH, C.J., concurs in principal opinion and concurring opinion of Judge Crow.

CROW, P.J., concurs in separate opinion.

CROW, Presiding Judge, concurring.

The principal opinion is soundly reasoned, and I concur in it.

While it is exasperating that Defendant's villainous conduct goes unpunished, that is the woeful consequence of the State's failure to analyze its evidence and file a charge the evidence will support. *See:*

---

6. Citing *Van Vleck*, 805 S.W.2d 297, the state in its brief says, "As applied to the facts in the case at bar, to prove an attempt to kidnap Angel would require sufficient evidence that [the defendant] intended to remove her from her present location or confine her without her consent *in order to inflict physical injury or terrorize her.*" (Our emphasis.)

7. The crime of false imprisonment is defined in § 565.130 as follows:

1. A person commits the crime of false imprisonment if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty.

*State v. Palmer,* 822 S.W.2d 536, 541 (Mo. App.S.D.1992), concurring opinion.